# Sheffield National Bank, *et al.* v. Corinth Bank & Trust Co.

### Bill to Declare Mortgage a General Assignment.

(Decided May 11, 1916.   72 South. 127.)

1. **Assignment; Benefit of Creditors; Enforcement.**—Where a husband executed a note to his wife secured by crop mortgages which plaintiff thereafter purchased, allegations that the wife fraudulently participated in the destruction of complainant's security for such indebtedness held to show equity in a bill to declare a mortgage given by the wife to secure her preexisting debt to be a general assignment for the benefit of all creditors under § 4295, Code 1907.

2. **Pleading; Ownership.**—A general allegation of ownership is an averment of an ultimate fact, and not a conclusion of law.

APPEAL from Colbert Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by the Corinth Bank & Trust Company against the Sheffield National Bank and others, to declare a mortgage a general assignment for the benefit of all creditors. From a decree overruling separate demurrers of respondents they appeal. Affirmed.

JOSEPH H. NATHAN, and ANDREWS & PEACH, for appellant. KIRK & RATHER, for appellee.

MCCLELLAN, J.—The appellee, a Mississippi corporation, filed this bill against Mary M. Pride and the Sheffield National Bank. The chancellor overruled the separate demurrers of the appellants to the bill as last amended, and this is the matter for review here.

(1) The purpose of both the original and the amended bills was the same; the amended bill working no unauthorized departure from the object sought to be effected by the complainant, though materially altering, as may be done, the allegations of fact.—*Ex parte Delpey*, 188 Ala. 449, 66 South. 22; *Pitts v. Powledge*, 56 Ala. 147; *Ingraham v. Foster*, 31 Ala. 123. As originally constructed and as framed after final amendment, the bill sought to have declared a general assignment (Code, § 4295) a mortgage executed by Mary M. Pride to the Sheffield National Bank, conveying, it is alleged, substantially all of the mortgagor's property to secure a pre-existing debt to the bank, and to administer the trust for the benefit of all creditors of the mortgagor who would come in to share the burdens of the contest.

L. T. Pride and Mary M. Pride are husband and wife. The latter owned a tract of land in Colbert county consisting of 2,000 acres, only 700 acres of which were so improved as to be cultivated. L. T. Pride rented the land from his wife for the year 1914 for $4,500, giving her his note in this form, aside from a waiver of exemptions: "Pride, Ala., December 30, 1913. On December 15, 1914, I promise to pay Mary M. Pride forty-five hundred dollars for rent on [of] Pride home place, containing two thousand acres. * * *"

It is alleged in the amended bill that complainant became on, to-wit, January 15, 1914, the owner of that note by purchase, as well as the owner, by purchase on or about that date, of 17 "crop mortgages" given to L. T. Pride by tenants on the farm designated in the rent note above reproduced. It is further alleged that the ownership of the rent note and of the "crop mortgages" armed the complainant with a landlord's lien on the crops grown on the place during the rental year 1914, and also liens, through the assignment of the "crop mortgages," on the parts of the crops belonging to the mortgagors on the place. It is further alleged that both the Prides and the Sheffield National Bank

concocted and effected a fraudulent design to appropriate and convert, and to divert to other purposes, these subjects of complainant's liens and, knowing complainant's reliance on L. T. Pride as its agent to conserve its rights under the liens, in the process designed and did effect the loss, by delay, by the complainant of its remedy by attachment to enforce the landlord's lien possessed by it as the owner of the rent note. It is further alleged that L. T. Pride was adjudged a bankrupt on February 8, 1915, and that on February 6, 1915, Mary M. Pride made a mortgage to secure a pre-existing debt to the Sheffield National Bank conveying her equity of redemption (two mortgages on the land of $10,000, each being then outstanding) in the Pride home place, which was substantially all of her property; the only remaining other property belonging to her being then under mortgages for an aggregate sum equal to its value.

The theory set forth in the original bill of complainant's relation to the rent note and the "crop mortgages" would, doubtless, have brought the asserted rights of the complainant within the rule of the statute forbidding the wife to secure a debt of the husband with her property. The last amendment of the bill puts the complainant's case in very different posture. It expressed the theory that complainant was owner, by purchase, of the rent note and the "crop mortgages," and that Mrs. Pride fraudulently participated in the destruction of its rights as the owner, by purchase, of the note and mortgages. If the wrongful acts in the mind of the pleader are sufficiently averred and characterized in the amended bill, then, under the averments of the amended bill, the complainant was and is a creditor of Mrs. Pride, within our satute (*Gunn v. Hardy,* 130 Ala. 642, 651, 31 South. 443; *Dowling v. Garner,* 195 Ala. 493, 70 South. 105), and, being a creditor, the complainant's amended bill possessed equity.

(2) It is insisted that the amended bill is insufficient in respect of its omission to aver the facts constituting the passage of the right and title to the rent note from Mrs. Pride, the payee therein, to the complainant; the general allegation being that complainant is the owner of that note. While there are authorities to the contrary, our opinion is that the general allegation of ownership is an averment of an ultimate fact, and not a conclusion of law.—*Taylor v. Perry,* 48 Ala. 240, 245; 21 Ency. Pl. & Pr., pp. 718, 719.

[Birmingham R. L. & P. Co. v. Cohill.]

Our conclusion is that the decree overruling the demurrers was well rendered.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.