83 So.2d 283

STONE CONTAINER CORPORATION

v.

William T. STAPLER et al.

I Div. 635.

Supreme Court of Alabama.

Nov. 10, 1955.

Robt. B. Wilkins, Mobile, for appellant.

526

LAWSON, Justice.

William T. Stapler and several other persons who reside in a subdivision of the City of Mobile known as "Chateauguay Place" filed this bill in the circuit court of Mobile County, in equity, against Stone Container Corporation, a corporation. The bill, as amended, was for an injunction to require the abatement of a nuisance and for damages. To the bill as amended, hereafter referred to as the bill, the respondent filed a demurrer addressed to the bill as a whole, which was overruled by the trial court. From that decree the respondent has appealed to this court.

According to the averments of the bill, the thirty-one persons named therein as complainants own seventeen separate tracts of land in "Chateauguay Place." Three individuals each own one tract. Each of fourteen couples, that is, husband and wife, appear to own one of the remaining tracts, although the relationship of man and wife is not expressly averred.

Alexander Foreman, Jr., Mobile, for appellees.

Paragraph Two of the bill reads, in part, as follows:

"That the complainants, respectively, are owners of real property with riparian rights in Three Mile Creek in the City and County of Mobile, State of Alabama, as follows:

"A. That complainants William T. Stapler and Mary S. Stapler own, maintain a home on, and have invested thousands of dollars in and about the improvement of by erection thereon of an expensive residence representing an investment of many thousands of dollars, that certain real property located in the City and County of Mobile, State of Alabama, described as follows:

"Lot Number 15 in the subdivision called 'Chateauguay Place', according to the plat of survey thereof recorded in Map Book 4, pages 453 et seq. of the records in the office of the Judge of the Probate Court of Mobile County, Alabama.

"Also, that portion of land lying to the north of Lot 15, Chateauguay Place, *said portion being bounded on the North by the South bank of Three Mile Creek;* bounded on the South by the North line of said Lot 15; bounded on the East by a line which is the projection on the same bearing of the East line of said Lot 15; bounded on the West by a line which is the projection on the same bearing of the West line of said Lot 15." (Emphasis supplied.)

In other subparagraphs of Paragraph Two are set out similar averments as to all of the other complainants. The description of each tract of land contains the language italicized above, "said portion being bounded on the North by the South bank of Three Mile Creek."

Paragraph Three of the bill reads:

"That said Three Mile Creek on which the complainants are riparian owners to the extent indicated by the allegations of their respective ownerships hereinbefore set forth in Paragraph Two hereof is a natural, fresh water flowing stream running from the western boundary of the City of Mobile, Alabama, into the Mobile River on the east of the City of Mobile; that said Three Mile Creek flows through a thickly populated, highly and expensively developed residential area of said city, that in its meanderings through the City of Mobile, said creek flows under public bridges across said creek and connecting public streets in the City of Mobile, Alabama; that the Master Plan of the said City of Mobile provides for the construction of a public parkway drive along the north side of said creek opposite the parcels of real property hereinbefore described in Paragraph Two hereof; and that there is located on the south bank of said Three Mile Creek between the parcels of property hereinbefore described in Paragraph Two hereof and the real property on which the respondent is operating said paper mill, a parcel of real property which has been dedicated for use by the City of Mobile as a public park."

The bill as amended contains many details of facts concerning the alleged nuisance and the injury suffered thereby, which we hereafter summarize.

When this bill was filed and for a period of time not in excess of four years prior thereto, respondent maintained its manufacturing plant at a point near the western limits of the City of Mobile on lands adjacent to Three Mile Creek, hereafter referred to as the creek. For use in connection with the manufacture of its finished products, the respondent pumps water from the creek into its plant and after the water has served the purpose for which it is withdrawn, it is discharged into the creek. When the water is withdrawn from the creek it is clear and is suitable for fish to live in, for bathing and other sports, and for irrigation and manufacturing purposes. The respondent uses waste paper, pulp and dyes in connection with the manufacture of its finished products and as a result of the

negligent, improper or wrongful manner in which the respondent discharges the water from its plant there is deposited in the creek "a great quantity of dye and suspended solids, in the form of pulp."

The waters and waste so discharged from the plant of the respondent discolor the creek and render it unsightly, filthy and unsanitary and cause the waters of the creek as they pass complainants' property and the property dedicated for public parks and as they flow under the public bridges to emit foul, deleterious, unpleasant, discomforting, noxious and unwholesome odors which permeate the air above such properties and enter the homes of complainants unless windows and doors are kept closed.

The matter so discharged into the creek has rendered it unfit for fish life, sports, irrigation or domestic purposes.

At times the waste matter so discharged has caused the creek to become almost stagnant and the waste then tends to congregate into small islands in the stream, which are favorable to the protection of the larvae of mosquitoes, which mosquitoes invade the atmosphere over the property of complainants and bite and annoy complainants, members of their families and their guests.

Some of the waste so discharged tends to fill up the bed of the creek and as a result at times of heavy rains the creek overflows its banks onto parts of the tracts of land owned by the complainants, and when the waters recede and return to their regular channel, large sheets of the pulp waste are left on the complainants' property, thereby disturbing the peace, comfort, health and rest of the complainants and depriving them of the lawful use of their land.

The action of the respondent in discharging the waste from its plant into the creek is continuous and has caused the value of complainants' property to become greatly depreciated.

In substance the bill prays that on final hearing the court will enter an order requiring the respondent, its officers, agents, servants and employees to cease discharging waste from its paper mill into the creek and requiring the respondent to clear and rid the bed of the creek of the deposits of matters discharged therein by the respondent. The bill also prays that the respondent be required to compensate the complainants for damages suffered by them during the twelve-month period immediately preceding the filing of the bill as a result of the alleged nuisance maintained by respondent.

The decree of the trial court reads in part as follows:

"* * * It is therefore, ordered, adjudged and decreed by the Court that said demurrer be and [it] hereby is overruled as to the Bill of Complaint as a whole and as to each aspect of said Bill to which it is addressed, and the Respondent is allowed ten (10) days from this date within which to file an answer."

From that decree the respondent has appealed to this court and has made six assignments of error, the first of which challenges the action of the trial court in overruling the demurrer to the bill as a whole. The other assignments of error are to the effect that the trial court erred in overruling the demurrer to the several aspects which appellant and perhaps the trial court evidently considered the bill to encompass.

The demurrer, containing forty-two grounds, begins: "Comes now the Respondent and demurs to the bill of complaint as amended heretofore filed in the above styled cause and to each aspect thereof separately and severally, and for grounds therefor, sets down the following, separately and severally: * * *" Under repeated decisions of this court the demurrer was addressed only to the bill as a whole. First Nat. Bank of Birmingham v. Bonner, 243 Ala. 597, 11 So.2d 348; Wells v. Wells, 249 Ala. 649, 32 So.2d 697; Smith-Howard Gin Co. v. Ogletree, 251 Ala. 366, 37 So.2d 507, and the many cases there cited; Cook v. Whitehead, 255 Ala. 401, 51 So.2d 886; Groover v. Darden, 259 Ala. 607, 68 So.2d 28.

It follows therefore that we will consider only the first assignment of error,

which, as heretofore indicated, challenges the action of the trial court in overruling the demurrer to the bill as a whole. If any ground for relief, as pleaded, is sufficient, then the demurrer addressed to the bill as a whole was properly overruled, even though other aspects, if any, might be defective. Sellers v. Valenzuela, 249 Ala. 620, 32 So.2d 520; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11; City of Birmingham v. Fairview Home Owners Association, 259 Ala. 500, 66 So.2d 775; Walker v. Walker, 261 Ala. 168, 73 So.2d 522.

Section 1081, Title 7, Code 1940, defines nuisances as follows:

"A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."

And the definition of a public and private nuisance is found in § 1084, Title 7, Code 1940, which reads:

"Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

Section 1086, Title 7, Code 1940, provides:

"If, however, a public nuisance causes a special damage to an individual, in which the public do not participate, such special damage gives a right of action."

The averments of the bill establish a public nuisance. Richards v. Daugherty, 133 Ala. 569, 31 So. 934. In Mayor and Aldermen of Birmingham v. Land, 137 Ala. 538, 545–546, 34 So. 613, 615, this court held:

"The pollution of Valley creek by emptying therein of the sewage of the city of Birmingham so as to contaminate and poison its waters certainly for more than a mile, extending to and through plaintiff's lands, and probably for a much greater distance—there being a public road in its immediate vicinity, and, indeed, crossing it within that part of its course affirmatively alleged to be polluted—in the manner, to the extent, and with the effect upon the water itself, and upon the atmosphere thereabouts averred in the complaint, is a public nuisance. Nolan v. City of New Britain [69 Conn. 668] 38 A. 703, 706, and authorities there cited."

And we are fully persuaded that the averments of the bill show the complainants suffer from the conduct of respondent an inconvenience, annoyance and injury not endured by the general public and, of consequence, they suffer a substantial damage peculiar to them, not suffered in common by the general public. Being so circumstanced, complainants may in their own names and right maintain a bill to abate the nuisance notwithstanding the City could maintain a similar bill. McIntosh v. Moody, 228 Ala. 165, 153 So. 182, and cases cited; Hanna v. Harman, 230 Ala. 620, 162 So. 109.

Since the averments of the bill establish a public nuisance and the demurrer was addressed to the bill as a whole, we see no occasion to deal here with the grounds of the demurrer which take the point that the bill shows on its face that the complainants had no riparian rights in the creek and therefore were not entitled to an injunction to abate a private nuisance.

Section 1088, Title 7, Code 1940, provides:

"No manufacturing or other industrial plant or establishment, or any of

530

its appurtenances, or the operation thereof, shall be or become a nuisance, private or public, by any changed conditions in and about the locality thereof after the same has been in operation for more than one year, when such plant or establishment or its appurtenances, or the operation thereof, was not a nuisance at the time the operation thereof began; but the provisions of this article shall not apply whenever a nuisance results from the negligent or improper operation of any such plant, establishment or any of its appurtenances."

■ But the provisions of that section are not a bar to injunctive relief in the instant case, for it is expressly averred that the condition of which complaint is made is caused by the negligent, improper, or wrongful manner in which the respondent discharges the water from its plant into the creek. Martin Building Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82.

[7] The averment that the complainants are the owners of the homes situated on the described real estate is an averment of an ultimate fact and not a conclusion of law. Sheffield Nat. Bank v. Corinth Bank & Trust Co., 196 Ala. 275, 72 So. 127; Beall v. Folmar, 199 Ala. 596, 75 So. 172. However, the complainants' right to maintain the bill is not dependent upon ownership of the property.

We will not treat those grounds of demurrer challenging the sufficiency of the averments of the bill seeking compensatory damages. As we have shown above, there was no demurrer to that aspect of the bill, the demurrer being addressed to the bill as a whole. The right to an injunction being sufficiently shown by the averments of the bill, we must affirm the action of the trial court in overruling the demurrer. See City of Birmingham v. Fairview Home Owners Ass'n, 259 Ala. 500, 66 So.2d 775.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.