COBB, Chief Justice.
 

 Synovus Trust Company, N.A. (“Syno-vus Trust”), Synovus Investment Advisors, Inc., Richard E. Neumann, Carolyn G. Dunkle, and Dan Davidson petition this Court for a writ of mandamus directing the trial court to dismiss the claims against them filed by Robert W. Raines, Ronald E. Raines, and James E. Raines alleging breach of a fiduciary duty. We grant the petition and issue the writ.
 

 Facts and Procedural History
 

 On August 9, 2007, Robert F. Raines (“Mr. Raines”), his wife, Helen H. Raines (“Mrs. Raines”), and their three children— Robert W. Raines, Ronald E. Raines, and James E. Raines (“the Raines children”)— filed this action against Synovus Trust, Synovus Trust Corporation, Synovus Investment Advisors, Inc., Richard E. Neu-mann, Carolyn G. Dunkle, and Dan Davidson (“the defendants”). According to the allegations of the Raineses’ complaint, Mr. and Mrs. Raines, with the help of the Raines children, operated the Jasper Bowling Center in Jasper for over 20 years with substantial financial success. The Raineses allege that Mr. and Mrs. Raines amassed an investment portfolio containing a large amount of stock in Wal-Mart Stores, Inc. (“Wal-Mart”), a corporation that operates a chain of discount retail stores.
 

 The Raineses allege that, on March 2, 2000, Neumann, Dunkle, and Davidson, as agents of Synovus Trust Corporation, approached Mr. and Mrs. Raines to solicit their banking and investment business. The Raineses further contend that Neu-mann, Dunkle, and Davidson represented to Mr. and Mrs. Raines that, if they allowed Synovus Trust Corporation to manage their money, Synovus Trust Corporation would generate a five to eight percent return on their money, and that Neumann, Dunkle, and Davidson could get such re
 
 *72
 
 turns on the Raineses’ money “blindfolded” and “in their sleep.” According to the Raineses, Neumann, Dunkle, and Davidson further represented that, most likely, they would generate 15 to 20 percent returns on Mr. and Mrs. Raines’s investment. The Raineses allege that Neumann, Dunkle, and Davidson presented Mr. and Mrs. Raines with marketing material from Sy-novus Trust Corporation showing that they could expect a 20 percent return on their investment if they allowed Synovus Trust Corporation to manage their money.
 

 The Raineses further contend that Neu-mann, Dunkle, and Davidson told Mr. and Mrs. Raines that they were invested “way too heav[il]y” in Wal-Mart stock, i.e., that they had too much Wal-Mart stock in their portfolios. According to the Raineses, Neumann, Dunkle, and Davidson represented that, if Mr. and Mrs. Raines would transfer their Wal-Mart stock and other securities into a trust to be managed by Synovus Trust Corporation, Synovus Trust Corporation would diversify Mr. and Mrs. Raines’s assets. The Raineses allege that Neumann, Dunkle, and Davidson told Mr. and Mrs. Raines that, if they allowed Sy-novus Trust Corporation to manage their investments, none of the Raineses would have to work again because of the money Synovus Trust Corporation would make for them. Neumann, Dunkle, and Davidson allegedly told Mr. and Mrs. Raines that Synovus Trust Corporation would “make a lot of money” for the Raines family.
 

 According to the Raineses’ complaint, on March 31, 2000, the Robert F. Raines Management Trust was created in reliance on the representations of Neumann, Dun-
 

 kle, Davidson, and other agents of Synovus Trust Corporation. Mr. Raines contributed approximately $1 million in securities and other assets to this trust. Mr. Raines was the sole settlor of this trust, which was revocable at any time. Mr. Raines and Synovus Trust Corporation were named as trustees of the management trust. Mr. and Mrs. Raines and the Raines children were named as beneficiaries of this trust.
 
 [1]
 

 The Raineses further allege in their complaint that, also on March 31, 2000, Mrs. Raines created the Helen H. Raines Management Trust in reliance on the representations of Neumann, Dunkle, Davidson, and other agents of Synovus Trust Corporation. Mrs. Raines contributed approximately $1 million in securities and other assets to this management trust. Mrs. Raines was the sole settlor of the trust, which, like the Robert F. Raines Management Trust, was revocable at any time. Mrs. Raines and Synovus Trust Corporation were named as trustees of the Helen H. Raines Management Trust. Mr. and Mrs. Raines and the Raines children were named as beneficiaries of this trust.
 
 [2]
 

 The Raineses allege that, in connection with the creation of the Robert F. Raines Management Trust and the Helen H. Raines Management Trust (“the trusts”), Mr. and Mrs. Raines each entered into an investment agreement with Synovus Trust Corporation. These investment agreements allegedly gave Synovus Trust Corporation the sole discretion to manage, invest, and have custody of the property in the trusts, taking into account the Raines-es’ express investment objective to maximize growth of the assets. According to the
 
 *73
 
 Raineses, these investment agreements conferred on Synovus Trust Corporation the sole discretion and ability to purchase, sell, or invest the trust properties as Syno-vus Trust Corporation deemed advisable.
 

 According to the Raineses’ complaint, Synovus Trust Corporation, Synovus Trust, and their agents failed to properly administer the trusts, did not diversify the trust assets, and did nothing at all to manage the trust assets, to generate income, to maximize the growth of the trust assets, or otherwise to carry out Synovus Trust Corporation’s obligations as cotrustee of the trusts. However, the Raineses allege, Sy-novus Trust Corporation, Synovus Trust, and their agents
 
 did
 
 charge management, advisory, and other service fees in excess of $130,000.
 

 On November 14, 2005, Synovus Trust, Synovus Trust Corporation, and then-agents provided notice to the Raineses of their resignation as trustees of both trusts, effective 90 days from the date of the notice. The Raineses contend that, at that time, they discovered that the defendants had not managed the assets in the trusts as allegedly promised.
 

 On June 30, 2008, the Raineses amended their complaint in this action. In the amended complaint, they sought to recover damages on the following causes of action: breach of fiduciary duty, fraud by misrepresentation or suppression of material facts, promissory fraud, and breach of contract.
 

 On July 15, 2008, the defendants moved to dismiss the Raines children’s breach-of-fiduciary-duty claims based on lack of standing. On September 24, 2008, the trial court denied the motion. On October 24, 2008, the defendants moved the trial court to certify for permissive appeal the following question, pursuant to Rule 5, Ala. R.App. P.: Whether the beneficiaries of a revocable trust, other than the settlor of the trust, have standing to assert claims alleging breach of fiduciary duty against a trustee when the trust is revocable at any time by the settlor. On October 10, 2008, the trial court granted the motion and certified the question.
 

 On October 23, 2008, the defendants filed in this Court a petition for permission to appeal and, alternatively, a petition for writ of mandamus. On November 21, 2008, this Court entered an order stating that the defendants’ filing would be treated as a petition for -writ of mandamus and also ordered answers and briefs.
 

 Standard of Review
 

 The standard of review applicable to a petition for a writ of mandamus is well settled:
 

 “ ‘Mandamus is an extraordinary remedy and requires a showing that there is: “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.”
 
 Ex parte Edgar,
 
 543 So.2d 682, 684 (Ala.1989);
 
 Ex parte Alfab, Inc.,
 
 586 So.2d 889, 891 (Ala.1991);
 
 Ex parte Johnson,
 
 638 So.2d 772, 773 (Ala. 1994).’
 
 Ex parte Gates,
 
 675 So.2d 371, 374 (Ala.1996). See also
 
 Ex parte Waites,
 
 736 So.2d 550, 553 (Ala.1999).”
 

 Ex parte Inverness Constr. Co.,
 
 775 So.2d 153,156 (AIa.2000).
 

 Analysis
 

 The lack of subject-matter jurisdiction may not be waived by the parties, and subject-matter jurisdiction may not be conferred by consent.
 
 Ex parte Alabama Dep’t of Human Res.,
 
 999 So.2d 891, 894 (Ala.2008) (citing
 
 Ex parte Davis,
 
 930 So.2d 497, 499-500 (Ala.2005)). Thus, “[o]n questions of subject-matter jurisdic
 
 *74
 
 tion, this Court is not limited by the parties’ arguments or by the legal conclusions of the trial ... court[ ] regarding the existence of jurisdiction.”
 
 Ex parte Alabama Dep’t of Human Res.,
 
 999 So.2d at 894-95 (citing
 
 Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983)). “A court is obligated to vigilantly protect against deciding cases over which it has no jurisdiction because ‘[i]t would amount to usurpation and oppression for a court to interfere in a matter over which it has no jurisdiction, and its pronouncements in respect thereto would be without force, and its decrees and judgments would be wholly void. This is a universal principle, as old as the law itself.’ ”
 
 Crutcher v. Williams,
 
 12 So.3d 631, 635 (Ala.2008) (quoting
 
 Wilkinson v. Henry,
 
 221 Ala. 254, 256, 128 So. 362, 364 (1930)).
 

 “ ‘Standing is a necessary component of subject matter jurisdiction.’ ”
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1028 (Ala.1999) (quoting
 
 Barshop v. Medina County Underground Water Conservation Dist.,
 
 925 S.W.2d 618, 626 (Tex.1996)). “Standing ... turns on ‘whether the party has been injured in fact and whether the injury is to a legally protected right.’ ”
 
 2018 Rainbow Drive,
 
 740 So.2d at 1027 (quoting
 
 Romer v. Board of County Comm’rs of the County of Pueblo,
 
 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting) (emphasis added in
 
 Rainbow
 
 Drive)).
 

 Alabama Code 1975, § 19-3B-101
 
 et seq.,
 
 also known as the “Alabama Uniform Trust Code,” became effective January 1, 2007. The Alabama Uniform Trust Code “applies to all trusts created before, on, or after January 1, 2007,” and “to all judicial proceedings concerning trusts commenced on or after January 1, 2007.” Ala.Code 1975, § 19-3B-1204(a)(l) and (2). “[A]ny rule of construction or presumption provided in [the Alabama Uniform Trust Code] applies to trust instruments executed before January 1, 2007, unless there is a clear indication of a contrary intent in the terms of the trust.” Ala.Code 1975, § 19-3B-1204(a)(4).
 

 Alabama Code 1975, § 19-3B-603(a), provides: “While a trust is revocable, rights of the beneficiaries are subject to the control of, and
 
 the duties of the trustee are owed exclusively to, the set-tlor.”
 
 (Emphasis added.) Therefore, regardless of whether the Raines children have suffered injury to their rights as beneficiaries of the trusts as a result of the defendants’ conduct, those rights were subject to the control of Mr. and Mrs. Raines while the trusts were revocable, and the fiduciary duties owed by the defendants were owed
 
 “exclusively
 
 ” to Mr. and Mrs. Raines during that time.
 
 See
 
 Ala.Code 1975, § 19-3B-603(a). Thus, the Raines children’s causes of action for breach of fiduciary duty do not seek redress for
 
 legally protected rights,
 
 and the Raines children have no standing to assert those claims.
 
 See, e.g., 2018 Rainbow Drive,
 
 740 So.2d at 1027 (noting that, to have standing to sue, a party must have suffered an injury to a legally protected right).
 

 Therefore, the defendants have demonstrated a clear legal right to a writ of mandamus directing the trial court to dismiss the breach-of-fiduciary-duty claims of the Raines children against them. In addition, we find that the defendants have carried their burden as petitioners to demonstrate an imperative duty upon the trial court to dismiss those claims and its refusal to do so, the lack of another adequate remedy, and the proper jurisdiction of this Court.
 
 See Ex parte Inverness Constr. Co.,
 
 775 So.2d at 156 (setting forth the requirements for the issuance of a writ of mandamus). Therefore, the defendants are entitled to the writ of mandamus.
 

 
 *75
 

 Conclusion
 

 The trial court is hereby directed to dismiss the breach-of-fiduciary-duty claims of the Raines children against all the defendants.
 

 PETITION GRANTED; WRIT ISSUED.
 

 LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
 

 MURDOCK, J., concurs in the result.
 

 [1]
 

 . It does not appear that the nonsettlor beneficiaries of the Robert F. Raines Management Trust held powers of withdrawal while the trust was revocable.
 
 See
 
 Ala.Code 1975, § 19-3B-603(b).
 

 [2]
 

 . It does not appear that the nonsettlor beneficiaries of the Helen H. Raines Management Trust held powers of withdrawal while the trust was revocable.
 
 See
 
 Ala.Code 1975, § 19-3B-603 (b).