Rel: December 22, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————

## SC-2023-0382

————————————

## David C. Milton, Kelly O. Milton, Southeastern Land Group, Inc., and Pinhoti Ridge Retreat, LLC

## v.

## Anthony D. Haywood and Sammy K. Gallman, individually and on behalf of the State of Alabama

### Appeal from Talladega Circuit Court
### (CV-23-900075)

SELLERS, Justice.

David C. Milton, Kelly O. Milton, and two entities with which they are associated, namely, Southeastern Land Group, Inc., and Pinhoti Ridge Retreat, LLC, (referred to collectively as "the defendants") appeal from a preliminary injunction entered by the Talladega Circuit Court requiring the removal of two gates the Miltons erected across what they claim is a private road. The injunction was entered at the request of plaintiffs below, Anthony D. Haywood and Sammy K. Gallman.[1] Because the trial court, in entering the preliminary injunction, did not require Haywood and Gallman to give security for costs, damages, and attorney fees, we reverse the trial court's judgment and remand the case for further proceedings.

The parties are either owners of land near Talladega National Forest or are the predecessors of such owners. The relevant parcels of land are located near the intersection of two unpaved roads or trails -- Union T Road and Skyline Drive.[2] Union T Road, which runs north and

---

[1]Haywood and Gallman also purported to sue on behalf of the State of Alabama.

[2]This Court refers to those roads or trails as Union T Road and Skyline Drive for convenience and for purposes of this opinion only. We express no opinion as to the substance of the parties arguments below,

south, terminates at its southern end at Skyline Drive. From that intersection, vehicles can turn right off of Union T Road onto Skyline Drive and continue southwest or turn left onto Skyline Drive and continue northeast. At its northeast end, Skyline Drive becomes Talladega County Road 600-2.

The Miltons, or one of the companies with which they are associated, own parcels of property surrounding the intersection of Union T Road and Skyline Drive. The record suggests that the Miltons, through Pinhoti Ridge Retreat, LLC, rent cabins to vacationers in the area. As for Haywood and Gallman, they each own separate parcels of property on Union T Road, north of the defendant's property and the intersection of Union T Road and Skyline Drive.

In October 2022, the Miltons erected two gates on Skyline Drive, thereby enclosing a short portion of that road approximately 75-100 feet east of the intersection of Skyline Drive and Union T Road. In their brief to this Court, the defendants describe the blocked off portion of road as a private "short woodland dirt road running through Defendants'

---

which deal with whether a portion of what we have referred to as Skyline Drive is a private, not public, road.

3

property." There is evidence indicating that the Talladega County engineer represented to the Miltons that the portion of road in question is not maintained by the county and that the engineer gave the Miltons preapproval to erect the gates.[3]

In their complaint, Haywood and Gallman asserted that, for many years, they and members of the public have used the blocked portion of Skyline Drive for convenient access to County Road 600-2 and to trails in Talladega National Forest. They asked the trial court to declare that the gates constitute a public nuisance and to direct the defendants to remove them.

Haywood and Gallman requested that the trial court enter a preliminary injunction requiring the defendants to open the gates and to refrain from interfering with travel over the disputed portion of road pending resolution of this action. The trial court granted that motion without requiring Haywood and Gallman to give security for costs, damages, or attorney fees. This appeal followed. See Rule 4(a)(1)(A), Ala. R. App. P.

---

[3]Talladega County, which was named as a defendant in this case, asked to be realigned as a plaintiff and asserted that the blocked portion of Skyline Drive is indeed maintained by the county.

Rule 65(c), Ala. R. Civ. P., provides:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases."

"It is mandatory that security be given under Rule 65(c), 'unless the trial court makes a specific finding based upon competent evidence that one or more of the exceptions, stating them, do exist.'" Anders v. Fowler, 423 So. 2d 838, 840 (Ala. 1982) (quoting Lightsey v. Kensington Mortg. & Fin. Corp., 294 Ala. 281, 285, 315 So. 2d 431, 434 (1975)).  Obviously, the exception to the security requirement for domestic-relations cases does not apply here, and, although Haywood and Gallman purported to sue on behalf of the State of Alabama, neither they nor the trial court have relied on the portion of Rule 65(c) exempting the State from posting security.

As the trial court recognized, however, this Court has acknowledged that there may be additional exceptions to the security requirement that are not spelled out in Rule 65(c).  Specifically, the trial court noted that one exception to the requirement can apply when the issue addressed by

the preliminary injunction "'"is one of overriding public concern."'" Spinks v. Automation Pers. Servs., Inc., 49 So. 3d 186, 190 (Ala. 2010) (quoting Anders, 423 So. 2d at 840, quoting in turn Lightsey, 294 Ala. 285, 315 So. 2d at 434). The trial court stated in the preliminary-injunction order that, "[b]ased upon the competent evidence, the [trial court] believes this case is of great public concern." This Court, however, is of the opinion that the evidence does not support the suggestion that the inability to access the disputed portion of Skyline Drive constitutes an issue overriding public concern.

The evidence suggests that Haywood and Gallman, and perhaps other members of the public, have used the disputed portion of the road for convenient access to County Road 600-2 and to trails in the nearby area of Talladega National Forest. But nothing indicates that there are no other reasonable means of accessing the area. Indeed, Haywood testified during the preliminary-injunction hearing that his inability to access the blocked portion of Skyline Drive resulted in an additional "fifteen minutes" of travel time to reach County Road 600-2. We do not view what appears to be a relatively minor inconvenience as rising to the level of "great public concern," as the trial court determined.

6

For their part, Haywood and Gallman point out that the defendants did not demand that security be given until they filed a postjudgment motion after the trial court had issued the preliminary injunction. But no authority is cited for the proposition that a party opposing a request for a preliminary injunction must specifically demand, before the injunction is entered, that security be given. And, as noted, giving security is <u>mandatory</u> upon the issuance of a preliminary injunction unless the evidence supports the application of a valid exception. According to this Court, "[t]here can be no injunction … until the [security] has been given." <u>Ex parte Miller</u>, 129 Ala. 130, 133, 30 So. 611, 612 (1901) (quoted with approval in <u>Spinks</u>, 49 So. 3d at 191). Accordingly, the failure to specifically ask the trial court before it issued the injunction to require the giving of security for costs, damages, and attorney fees is not fatal to the defendants' argument. We reverse the trial court's preliminary injunction and remand the case for further proceedings.[4]

---

[4]We note that, in addition to the exception to the security requirement for issues involving overriding public concern, this Court has recognized other exceptions to the requirement, including an exception when "'"only a nominal security"'" is required. <u>Spinks</u>, 49 So. 3d at 190 (quoting <u>Anders</u>, 423 So. 2d at 840, quoting in turn <u>Lightsey</u>,

REVERSED AND REMANDED.

Wise, Mendheim, Stewart, Mitchell, and Cook, JJ., concur.

Parker, C.J., concurs in the result in part and dissents in part, with opinion.

Shaw, J., dissents, with opinion.

Bryan, J., dissents.

---

294 Ala. at 285, 315 So. 2d at 434). Although the trial court stated in its preliminary-injunction order that it had not received evidence indicating that the defendants would be harmed by the preliminary injunction, it did not purport to rely on any exception to the security requirement other than the overriding-public-concern exception.

PARKER, Chief Justice (concurring in the result in part and dissenting in part).

I concur with the main opinion that the preliminary injunction should be reversed. However, I respectfully dissent from the main opinion's failure to instruct the trial court to dismiss this action for lack of subject-matter jurisdiction.

The main opinion does not address the argument of David C. Milton, Kelly O. Milton, Southeastern Land Group, Inc., and Pinhoti Ridge Retreat, LLC ("the defendants"), that Anthony D. Haywood and Sammy K. Gallman ("the plaintiffs") have not presented a justiciable controversy. Because the existence of a justiciable controversy is material to the issue of subject-matter jurisdiction, I think this Court must address that threshold issue before addressing, if at all, the arguments concerning the preliminary injunction. And I agree with the defendants that the plaintiffs have not presented a justiciable controversy here and that, therefore, the trial court lacked jurisdiction.

In my opinion, this case presents an opportunity to fill a gap in this Court's jurisprudence. This Court has held before that the concept of standing is generally relevant only in public-law cases. Ex parte BAC

Home Loans Servicing, LP, 159 So. 3d 31, 44-45 (Ala. 2013). This, as the Court noted, is because the concept of standing "'can be erroneously equated with "real party in interest" or "failure to state a claim."'" Id. at 46 (quoting Jerome A. Hoffman, The Malignant Mystique of "Standing," 73 Ala. Law. 360, 362 (2012)). But the situation of the plaintiffs in this case does not fit neatly into either of those concepts.

The real-party-in-interest analysis focuses on identifying "'the person who possesses the right sought to be enforced.'" Dennis v. Magic City Dodge, Inc., 524 So. 2d 616, 618 (Ala. 1988) (quoting 6 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1542 (1971)). The persons who possess the right sought to be enforced in a public-nuisance claim are "all persons who come within the sphere of its operation, though it may vary in its effects on individuals." § 6-5-121, Ala. Code 1975. The plaintiffs here are clearly in that category. The defendants' gates prevent the plaintiffs from using a portion of the road across the defendants' property that they are accustomed to using. Yet they, as private individuals, are generally barred from bringing a public-nuisance claim, regardless of the real-party-in-interest analysis. Id.

10

By contrast, the failure-to-state-a-claim analysis focuses on the elements of the claim itself. However, whether the proper party has brought the claim is not an element of a public-nuisance claim. Ordinarily, assuring that a case is brought by the proper party is addressed by the "damages" element of a tort claim. But the category of persons empowered to bring a public-nuisance claim is statutorily restricted. See §§ 6-5-121 and 6-5-123, Ala. Code 1975. And, crucially, that restriction does not go to the elements of a public-nuisance claim.

The torts of public and private nuisance are creatures of statute in Alabama. Section 6-5-120, Ala. Code 1975, defines a "nuisance" as "anything that works hurt, inconvenience, or damage to another." This same definition applies to both public and private nuisances. § 6-5-121. Section 6-5-121 defines a "public nuisance" as "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." This is in opposition to a "private nuisance," which is merely "one limited in its injurious effects to one or a few individuals." Id. Section 6-5-121 goes on to state: "Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state." Id. This last provision

11

is subject to an exception: "If a public nuisance causes a special damage to an individual in which the public does not participate, such special damage gives a right of action." § 6-5-123.

The definitional difference between a public nuisance and a private nuisance is the identity of the damaged parties. For a private-nuisance claim, the plaintiffs must prove that they are the "one or a few individuals" who have been injured by the nuisance. For a public-nuisance claim, the plaintiff must prove that the nuisance "damages all persons who come within the sphere of its operation." However, for the latter, only the State (or, as an exception, individuals who suffer special damage) may actually bring the claim. That is to say, the identity of the person or persons who may bring the claim is not an element of a public-nuisance claim, but is an additional statutory restriction. See Stone Container Corp. v. Stapler, 263 Ala. 524, 529, 83 So. 2d 283, 287 (1955) (holding that "[t]he averments of the bill establish a public nuisance" before going on to consider whether the plaintiffs had alleged or established special damage). But as noted above, this restriction does not fit a real-party-in-interest analysis either. I think we can best plug this gap in our jurisprudence by applying a narrow exception to the general

inapplicability of standing to private-law matters. Ex parte Endo Health Sols. Inc., 354 So. 3d 488, 493 (Ala. 2021) (plurality opinion) (noting that the concept of standing is "generally relevant only in public-law cases" (citing Ex parte BAC Home Loans Servicing, 159 So. 3d at 44)) (emphasis added)).

BAC Home Loans Servicing dealt extensively with the excessive use this Court had made of the concept of standing in the past. The concept of standing had been applied to cases when the real problem was the plaintiff's failure to show that he was the "real party in interest" or to state a claim on which relief could be granted. The Court's purpose for addressing this issue as it did was as follows:

> "[T]he word 'standing' unnecessarily invoked in the proposition can be erroneously equated with 'real party in interest' or 'failure to state a claim.' This simple, though doctrinally unjustified, extension could swallow up Rule 12(b)(6), Rule 17[, Ala. R. Civ. P.,] and the whole law of amendments."

Id. at 46 (quoting Hoffman, The Malignant Mystique of "Standing," 73 Ala. Law. at 362). This makes sense, insofar as it speaks to the Court's wish to be more disciplined in its use of the concept of standing.

In this case, however, the statutory restriction on who may bring a public-nuisance claim fits a "standing" analysis better than either

analysis mentioned by this Court in <u>BAC Home Loans Servicing</u>. And the members of this Court have already disagreed concerning the extent to which the holding in <u>BAC Home Loans Servicing</u> is applicable to public-nuisance claims. <u>Ex parte Endo Health Solutions Inc.</u>, 354 So. 3d 488 (Ala. 2021), the only case in which this Court has attempted to <u>apply</u> <u>BAC Home Loans Servicing</u> <u>to a public-nuisance claim</u>, was a plurality decision. And, in that case, the plaintiffs had alleged special damage. The Court in <u>Endo Health Solutions</u> considered not whether the plaintiffs had <u>alleged</u> special damage, as in this case, but whether they had <u>proved</u> special damage. The <u>Endo Health Solutions</u> plurality held that proving special damage was not a threshold matter. Here, it is undisputed that the plaintiffs have not even alleged special damage. They attempted to sue on behalf of the State of Alabama instead. While <u>proof</u> of special damage may not be a jurisdictional matter, failure to <u>allege</u> special damage is tantamount to alleging a claim that is statutorily prohibited. This, in my opinion, is a threshold matter, and jurisdictional in nature. In cases like this, I think a standing analysis may therefore be applied as a sort of backstop when necessary to give effect to the enactments of the legislature.

14

Additionally, much of the modern criticism about applying the doctrine of standing in private-law cases comes from the state-court decisions issued after Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), in which the United States Supreme Court developed the doctrine of standing for public-law cases. See, e.g., BAC Home Loans Servicing, 159 So. 3d at 44 (holding that standing, as developed in Lujan, addressed only public-law cases and that applying it to private-law cases was error); Hanes v. Merrill, [Ms. SC-2022-0869, Apr. 7, 2023] ___ So. 3d ___, ___ (Ala. 2023) (Parker, C.J., concurring in part and concurring in the result) (arguing that the distinction between public-law cases and private-law cases was historically accurate); Hoffman, The Mysterious Mystique of "Standing," 73 Ala. Law. at 361 ("I cherish my grievances with the abracadabra the United States Supreme Court worships as 'standing.'"). However, this Court has held for over 100 years that a private citizen lacks "standing" to bring a public-nuisance claim, long before the United States Supreme Court decided Lujan. See, e.g., Sloss-Sheffield Steel & Iron Co. v. Johnson, 147 Ala. 384, 386, 41 So. 907, 908 (1906) ("The general rule is that a private individual, who suffers no damage different from that sustained by the public at large, has no standing in court for

15

the abatement of a public nuisance."); State ex rel. Powell v. General Acceptance Co., 269 Ala. 627, 630, 114 So. 2d 920, 923 (1959) ("In the absence of statutory authorization, a private citizen has no standing to champion the right of the public in abating a public nuisance in an action brought in behalf of the state."). Thus, although we correctly clarified our standing jurisprudence in BAC Home Loans Servicing, I believe that our precedents that significantly predate Lujan instruct us to continue looking at this particular issue through the lens of standing.

Finally, this Court has clarified that the concept of standing under the Alabama Constitution is different than it is under the United States Constitution. Under the Alabama Constitution, " '[t]o say that a person has standing is to say that that person is the proper party to bring the action. To be a proper party, the person must have a real, tangible legal interest in the subject matter of the lawsuit.' " Town of Cedar Bluff v. Citizens Caring for Children, 904 So. 2d 1253, 1256 (Ala. 2004) (quoting Doremus v. Business Council of Alabama Worker's Comp. Self-Insurer's Fund, 686 So. 2d 252, 253 (Ala. 1986)) (emphasis added). "The concept of 'standing' refers to a plaintiff's ability to bring the action; the plaintiff must have a legally sufficient interest in that lawsuit, and, if he or she

16

does not, the trial court does not obtain jurisdiction over the case." Ex parte Merrill, 264 So. 3d 855, 862 (Ala. 2018) (emphasis added). "'"[S]tanding" under Alabama law exists where the legislature has specifically provided a person with a cause of action … and where the interests of the parties are sufficiently "adverse."'" Id. at 864 (Shaw, J., concurring specially) (quoting McDaniel v. Ezell, 177 So. 3d 454, 459 (Ala. 2015) (Shaw, J., dissenting)) (emphasis added). By this reasoning, only those parties to whom the Legislature has extended a cause of action have standing to sue. Regarding the case before us, the Legislature explicitly provided that, "[g]enerally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state." § 6-5-121 (emphasis added). It also provided that "[i]f a public nuisance causes a special damage to an individual in which the public does not participate, such special damage gives a right of action." § 6-5-123 (emphasis added). It would contradict those provisions to allow courts to consider public-nuisance claims brought by people the Legislature has not "'specifically provided … with a cause of action ….'" Ex parte Merrill, 264 So. 3d at 864 (Shaw, J., concurring specially).

17

It is undisputed that the plaintiffs do not allege damages "different in kind and degree from those suffered by the public in general." Gary Pugh Realty, Inc. v. Hubbard, 514 So. 2d 1304, 1305 (Ala. 1987). Hence their attempt to sue on behalf of the State of Alabama. But neither plaintiff is the Attorney General of the State of Alabama. Therefore, they cannot sue on behalf of the State to prevent an alleged public nuisance. Ex parte State (In re Stephenson), 113 Ala. 85, 21 So. 210 (1896). Nor do they purport to sue on behalf of any political subdivision of this State in any official capacity. See § 6-5-122, Ala. Code 1975. Therefore, because the plaintiffs do not allege special damage, they lack standing to sue, and their public-nuisance claim is not justiciable. §§ 6-5-121 and 123; General Acceptance Corp., 269 Ala. at 630, 114 So. 2d at 923.

The defendants stop short of requesting any specific relief from this Court based on the standing issue. The only relief they request is that this Court reverse the preliminary injunction. This could be why the main opinion does not address the standing issue. However, because standing is a necessary component of subject-matter jurisdiction (Ex parte Synovus Trust Co., 41 So. 3d 70, 74 (Ala. 2009)), neither this Court nor the trial court have subject-matter jurisdiction over this case. Lack

18

of subject-matter jurisdiction may be raised <u>ex mero motu</u> at any time and cannot be waived by the parties. <u>Id.</u> at 73-74. For this reason, I would reverse the preliminary injunction and remand the case with instructions to the trial court to dismiss the action for lack of subject-matter jurisdiction.

SHAW, Justice (dissenting).

I respectfully dissent. I am not convinced that when a private party blocks the use of a public road there is no issue "of overriding public concern."

Anthony D. Haywood and Sammy K. Gallman ("the plaintiffs") alleged that David C. Milton, Kelly O. Milton, Southeastern Land Group, Inc., and Pinhoti Ridge Retreat, LLC ("the defendants"), had erected gates on a portion of a public road that crosses through the defendants' property. The plaintiffs sought an injunction to prevent the defendants from blocking the road. The trial court granted the injunction.

The sole issue addressed in the main opinion is whether the plaintiffs were required to post security to obtain the injunction. Rule 65(c), Ala. R. Civ. P., generally requires such security. However, security is not required when an injunction addresses an issue "of overriding public concern." Lightsey v. Kensington Mortg. & Fin. Corp., 294 Ala. 281, 285, 315 So. 2d 431, 434 (1975). See also City of Gadsden v. Boman, 143 So. 3d 695, 706 (Ala. 2013).

The defendants admit that the public uses the road across which they erected the gates and that they are attempting to stop vehicular

20

traffic. The plaintiffs testified that they use the road to access their properties. The plaintiffs' complaint alleges in numerous places that the road is a public road; it further states: "Talladega County actively maintains some portion of [the road]. Talladega County is solely named in this suit based on the fact [that the road] 1) is a public road, 2) is located in Talladega County, [and] 3) Talladega County maintains at least some portion thereof." In its answer to the complaint, Talladega County indicates that it "admits all the allegations set forth in the Plaintiffs['] complaint."[5] There is no evidence in the record showing that the road was restricted from public use before the defendants constructed their gates across it.

> "In <u>Rodgers v. Commercial Casualty Ins. Co.</u>, 237 Ala. 301, 186 So. 684 [(1939)], [this Court stated that] a 'highway' denotes '"every thoroughfare which is used by the public, whether it be a carriageway, a horseway, a footway, or a navigable river." [Citations omitted] <u>And a public highway is one opened to the general public use, though it is the right to travel upon the highway by all the world, and not the exercise of the right which makes the way a highway</u>, nor is its character determined by the number of persons who actually use it for passage.'"

---

[5]Talladega County also attempted to have itself realigned with the plaintiffs.

21

Traylor v. Butler, 291 Ala. 560, 563, 284 So. 2d 263, 265 (1973) (emphasis added).

The trial court, in granting the injunction, described the road numerous times as a "public road," found that the "injunction is in the greater interest of the public good," and stated that "this case is of great public concern." It clearly invoked an exception to the security requirement in Rule 65(c). "A public road … belongs entirely to the public, and there can be no limitation to private use." Williams v. Nearen, 540 So. 2d 1371, 1373 (Ala. 1989). If the road at issue is a public road, then the defendants' act of blocking that road denies the entire public its right to travel upon it. Although the public by some other circuitous route may avoid the gates, a proposition that would be true for all but the most remote public roads, the gates have nonetheless limited the public's use of the road.

I am not convinced by the defendants' argument that their erection of the gates on a public road is not "of overriding public concern." Therefore, I respectfully dissent to the contrary holding of the main opinion. The defendants raise numerous other potential errors on

appeal, but because those issues are pretermitted by the main opinion, I see no need to address them.