MURDOCK, Justice.
The above-styled petition for a writ of certiorari and appeal have been consolidated for the purpose of issuing one opinion.

I. Facts and Procedural History

A. Case No. 1110373

In case no. 1110373, we granted a petition for a writ of certiorari filed by BAC Home Loans Servicing, LP (“BAC”), challenging the reversal by the Court of Civil Appeals of a summary judgment entered by the Jefferson Circuit Court on BAC’s ejectment action against Bessie T. Sturdi-vant. See Sturdivant v. BAC Home Loans Servicing, LP, 159 So.3d 15 (Ala. Civ.App.2011). We reverse the judgment of the Court of Civil Appeals and remand the case.
On December 31, 2009, BAC filed a complaint in ejectment against Sturdivant. Specifically, BAC alleged that it had sold at foreclosure certain property pursuant to the terms of a mortgage executed by Stur-divant, that it had purchased the property at the foreclosure sale, and that Sturdivant had failed to surrender possession of the property. Sturdivant answered and denied the material allegations of the complaint.
*33 BAC moved for a summary judgment, and Sturdivant opposed that motion. After conducting a hearing, the trial court, on October 29, 2010, entered a summary judgment in favor of BAC. The trial court also ordered that a writ of possession in favor of BAC be issued. Sturdivant filed a postjudgment motion, which the trial court denied. Sturdivant appealed.
The opinion of the Court of Civil Appeals in this action provides an extensive rendition of relevant facts, which are not disputed by the parties:
“In December 2007, Sturdivant obtained a loan from Security Atlantic Mortgage Co., Inc. (‘Security Atlantic’), to purchase a home. To secure the loan, Stur-divant executed a mortgage with Mortgage Electronic Registration Systems, Inc. (‘MERS’), ‘solely as nominee’ for Security Atlantic. The record indicates that the loan was insured by the Federal Housing Administration (‘FHA’). A portion of the security agreement for the mortgage reads:
“ ‘This security instrument is given to Mortgage Electronic Registration Systems, Inc. (“MERS”), solely as nominee for lender, as hereinafter defined, and lender’s successors and assigns, as beneficiary.... For this purpose, borrower does hereby mortgage, grant and convey to MERS (solely as nominee for lender and lender’s successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in Jefferson County, Alabama....
“ ‘... Borrower understands and agrees that MERS holds only legal title to the interest granted by borrower and the security instrument; but, if necessary to comply with law or custom, MERS (as nominee for lender and lender’s successors and assigns) has the right to exercise any and all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of lender.... ’
“... Sturdivant testified that in March 2009 she began contacting BAC about the possibility of modifying her loan payments.
“The record indicates that when Stur-divant did not make the loan payments due in April 2009 or May 2009, BAC sent a letter on June 8, 2009, in which it identified itself as the ‘servicer’ of her loan. In that letter, BAC notified Stur-divant that if her default on the terms of the mortgage was not cured, the loan payments would be accelerated and the balance of the loan would be due.
“BAC presented evidence indicating that in September 2009 it referred the matter to an attorney to begin the foreclosure process. The record contains two letters, each dated September 20, 2009, sent by BAC’s attorney to Sturdi-vant. One of the September 20, 2009, letters identified BAC as the ‘holder of [Sturdivant’s] mortgage,’ informed Stur-divant of the total amount due under the terms of the mortgage-loan contract, and notified her of the procedures for disputing the debt. The other September 20, 2009, letter from BAC’s attorney to Sturdivant notified Sturdivant that BAC, identified as the holder of the mortgage, had instructed the attorney to proceed with the foreclosure of the mortgage and that a foreclosure sale was scheduled for October 28, 2009.
[[Image here]]
“The foreclosure sale scheduled for October 28, 2009, was postponed until December 1, 2009, while BAC continued to review Sturdivant’s request for a modification of her loan....
*34 “In his affidavit, which was submitted in support of BAC’s summary-judgment motion, [Ken] Satsky[, an assistant vice president for BAC,] said that, ‘[i]n my employment capacity, I am personally familiar’ with Sturdivant’s mortgage account. Satsky’s affidavit stated that Sturdivant’s mortgage had originated with MERS, on behalf of Security Atlantic or its successors and assigns, and that foreclosure proceedings had been initiated. Satsky’s affidavit does not reference an assignment of the mortgage to BAC, and it does not indicate the identity of the entity that initiated the foreclosure proceedings. Satsky testified that Sturdivant defaulted on the note secured by the mortgage and that BAC ‘provided her with Notice of Default and acceleration of the debt due under said note by letter dated January 6, 2009.’ The record on appeal does not contain a letter dated January 6, 2009, and Satsky’s affidavit does not refer to the September 20, 2009, letters BAC submitted to the trial court in support of its summary-judgment motion.
“Also in support of its summary-judgment motion, BAC submitted into evidence a statement that a notice of foreclosure had been published on November 7, 2009, in the Alabama Messenger, a ‘weekly newspaper of general circulation.’ See § 35-10-8, Ala.Code 1975 (governing the notice required for a foreclosure sale). In that notice, BAC stated that it was the ‘holder of [Sturdivant’s] mortgage,’ which contained a power of sale, and that BAC would sell the property on December 1, 2009, at public auction. BAC also represented in its published notice of the proposed December 1, 2009, foreclosure sale that Sturdivant had mortgaged the property to MERS, as nominee for Security Atlantic or its successors and assigns, and that ‘said mortgage was subsequently assigned to BAC Home Loans Servicing, LP, by instrument recorded in [the probate court].’
“On December 1, 2009, the property was sold at the foreclosure sale that BAC had scheduled. BAC was the purchaser of the property at that sale. Also on December 1, 2009, MERS assigned Sturdivant’s mortgage to BAC.[1]
“In support of its motion for a summary judgment, BAC submitted to the trial court a copy of its auctioneer’s foreclosure deed, also dated December 1, 2009, which states, among other things, that MERS had assigned the mortgage to BAC, that BAC had recorded that assignment of the mortgage, and that BAC had completed other steps necessary to obtain a deed by virtue of its purchase of the property at the foreclosure sale. With regard to the assignment of the mortgage, the December 1, 2009, auctioneer’s foreclosure deed specifically states:
“‘WHEREAS, BESSIE T. STUR-DIVANT, unmarried, executed a mortgage to Mortgage Electronic Registration Systems, Inc. [MERS], acting solely as nominee for Lender and Lender’s Successors and Assigns on the 18th day of December 2007, on that certain real property hereinafter described, which mortgage is recorded in Book LR200801, Page 21971, of the *35 records in the Office of the Judge of Probate, Jefferson County, Alabama; which said mortgage was subsequently assigned to BAC Home Loans Servicing LP by instrument recorded in Book 200912 Page 14464 of said Probate Court records.... ’
“... The ‘book’ and ‘page’ numbers identified in the above-quoted portion of the December 1, 2009, auctioneer’s foreclosure deed are not printed in typeface, as is the remainder of the deed. Rather, those numbers are handwritten insertions into the auctioneer’s foreclosure deed. The evidence submitted by BAC in support of its summary-judgment motion indicates that the December 1, 2009, assignment of Sturdivant’s mortgage from MERS to BAC and the December 1, 2009, auctioneer’s foreclosure deed were each first recorded in the office of the Jefferson Probate Court (‘the probate court’) on December 28, 2009, and the time stamps on those documents indicate that the auctioneer’s foreclosure deed was recorded one second after the assignment.
“On December 4, 2009, BAC sent a letter to Sturdivant notifying her of its purchase of the property at the December 1, 2009, foreclosure sale and demanding possession of the property. ...”
Sturdivant, 159 So.3d at 16-18 (footnotes and emphasis omitted).
When Sturdivant did not voluntarily surrender possession of the property, BAC filed a statutory action in ejectment pursuant to § 6-6-280(b), Ala.Code 1975. As the Court of Civil Appeals explained:
“BAC’s claim for ejectment is one arising under § 6-6-280(b), Ala.Code 1975. See EB Invs., L.L.C. v. Atlantis Dev., Inc., 930 So.2d 502 (Ala.2005) (the claim was one in ejectment under § 6-6-280(b), Ala.Code 1975, when the complainant alleged that it was entitled to possession of land because of its purchase of the land at a foreclosure sale and that the defendant was unlawfully detaining same); Muller v. Seeds, 919 So.2d 1174 (Ala.2005), overruled on other grounds, Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89 (Ala.2010) (same); and Earnest v. First Fed. Sav. & Loan Ass’n of Alabama, 494 So.2d 80 (Ala.Civ.App.1986) (same).
“Section 6-6-280(b) provides as follows:
“ ‘(b) An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same. This action must be commenced in the name of the real owner of the land or in the name of the person entitled to the possession thereof, though the plaintiff may have obtained his title thereto by a conveyance made by a grantor who was not in possession of the land at the time of the execution of the conveyance thereof. The plaintiff may recover in this action mesne profits and damages for waste or any other injury to the lands, as the plaintiffs interests in the lands entitled him to recover, to be computed up to the time of the verdict.’
“(Emphasis added.) Therefore, as part of its initial burden for seeking a summary judgment in its action seeking possession of the property, BAC was required to present evidence constituting a *36 prima facie case that it had legal title or a right to possess the property. See § 6—6—280(b); Cadle Co. v. Shabani, 950 So.2d [277] at 279 [ (Ala.2006) ] (Tn order to maintain an action for ejectment, a plaintiff must allege either possession or legal title, and the “action must be commenced in the name of the real owner of the land or in the name of the person entitled to possession thereof....” § 6-6-280, Ala.Code 1975.’); and MacMillan Bloedell, Inc. v. Ezell, 475 So.2d 493, 496-97 (Ala.1985). See also Woodland Grove Baptist Church v. Woodland Grove Cmty. Cemetery Ass’n, 947 So.2d 1081, 1041 n. 10 (Ala.2006) (‘“Legal title” is defined as “[a] title that evidences apparent ownership but does not necessarily signify full and complete title or a beneficial interest.” Blank’s Law Dictionary 1528 (8th ed. 2004).’).”
Id. at 19-20 (footnote omitted).
On appeal, the Court of Civil Appeals pretermitted all arguments raised by Stur-divant except one: “[T]hat the summary judgment in favor of BAC was improper because, [Sturdivant] says, BAC failed to make a prima facie showing that it had the authority to, and did, validly foreclose on the property.” Id. at 19. Although Sturdi-vant made other arguments regarding the validity of the foreclosure sale, the specific argument addressed by the Court of Civil Appeals was that BAC lacked the authority to foreclose on Sturdivant’s property because, at the time the foreclosure proceedings began, the assignment of the mortgage to BAC had not yet occurred and therefore BAC “had no valid right to sell the property at foreclosure.” Id. at 20-21. Therefore, according to the Court of Civil Appeals, the deed BAC purported to receive as a result of that foreclosure was not valid and, without a valid foreclosure sale to BAC, BAC would not have had the legal title or right of possession required by § 6-6-280(b) for an ejectment action.
In response, BAC correctly noted in the Court of Civil Appeals that Sturdivant’s argument as to the validity of the foreclosure sale in relation to BAC’s authority to conduct that sale was not raised in the trial court. BAC argued that the issue therefore had been waived and could not be raised for the first time on appeal. See Ramson v. Brittin, 62 So.3d 1035, 1036 n. 1 (Ala.Civ.App.2010) (“ ‘This Court cannot consider arguments advanced for the purpose of reversing the judgment of the trial court if those arguments were never presented to the trial court for consideration or raised for the first time on appeal.’” (quoting State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005))). The Court of Civil Appeals nevertheless proceeded to consider the issue, relying on this Court’s decision in Cadle v. Shabani, 950 So.2d 277 (Ala.2006).
Specifically, the Court of Civil Appeals relied on Cadle for the proposition that the issue presented was one of “standing” on the part of BAC to have brought the ejectment action and, in turn, of the trial court’s subject-matter jurisdiction. Accordingly, the Court of Civil Appeals reasoned, the issue could be raised by Sturdi-vant at any time and was not waived by Sturdivant’s failure to have raised it in the trial court:
“Sturdivant’s argument implicates the issue of standing, which involves whether the court had subject-matter jurisdiction to consider BAC’s ejectment action. See Cadle Co. v. Shabani, 950 So.2d 277, 279 (Ala.2006) (When the plaintiff ‘lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over th[e] case, and its resulting judgment [was] therefore void.’). Appellate courts are ‘ “ ‘duty bound to notice ex mero motu *37 the absence of subject-matter jurisdiction.’ ” ’ Riley v. Hughes, 17 So.3d 643, 648 (Ala.2009) (emphasis added) (quoting Baldwin Cnty. v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), quoting in turn Stamps v. Jefferson Cnty. Bd. of Educ., 642 So.2d 941, 945 n. 2 (Ala.1994)). ‘When a party without standing purports to commence an action, the trial court acquires no subject-matter jurisdiction.’ State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999). The issue of a lack of standing may not be waived, and an argument concerning standing may be asserted for the first time on appeal. RLI Ins. Co. v. MLK Ave. Redev. Corp., 925 So.2d 914, 918 (Ala.2005). In fact, in an appeal from a judgment in an ejectment action, our supreme court, on its own motion, has vacated the judgment ejecting the mortgagor when the evidence demonstrated that the plaintiff did not have legal title to the property at issue and, therefore, lacked standing to bring the action. See Cadle Co. v. Shabani, supra. Accordingly, we address the issue whether BAC had standing to bring the ejectment action.”
Sturdivant, 159 So.3d at 19 (final emphasis added).

B. Case No. 1110458

Ronald C. Robinson appeals a summary judgment entered by the Mobile Circuit Court in favor of Steven J. Cox and Robin K. Cox in the Coxes’ ejectment action against Ronald Robinson and his wife, Shirley G. Robinson.[2] We affirm the judgment of the trial court.
The operative facts are essentially undisputed. In November 1998, B.H. Mathis and L.E. Mathis conveyed real estate by a vendor’s lien deed to the Robinsons, reserving to themselves in the deed a vendor’s lien for satisfaction of the unpaid balance of the purchase price (hereinafter referred to as “the mortgage”).[3] On November 19, 2002, the Mathises assigned the mortgage to Amerivest Mortgage Service, LLC (“Amerivest”). On December 18, 2002, Amerivest assigned the mortgage to “Wachovia Bank, N.A., as Trustee (Bay-view)” (“Wachovia”). By an instrument dated March 23, 2011, the mortgage was ultimately assigned to Bayview Loan Servicing, LLC (“Bayview”). •
Subsequently, the Coxes filed an action in ejectment or in the nature of ejectment, pursuant to § 6-6-280, Ala.Code 1975, against the Robinsons in the Mobile Circuit Court. The operative complaint averred that the Robinsons had been the owners and mortgagors of real estate located in Mobile County, and that the mortgage had been “duly foreclosed” by the exercise of a power of sale contained in the mortgage and' that the Coxes were the purchasers at the foreclosure sale. It further alleged that, “from and since said foreclosure, [the Coxes] had the legal right to possession thereof; and pending said possession and before the commencement of [the] suit, [the Robinsons had] entered and remained upon said property and unlawfully with[held] and detained] the same.”
The foreclosure deed under which the Coxes claimed title was attached to the complaint. The deed describes the process and circumstances under which the Coxes claim their title as follows:
*38 “WHEREAS, on November 2, 1998, Ronald C. Robinson and Shirley G. Robinson,' Mortgagor(s) ... executed a certain mortgage to B.H. Mathis and L.E. Mathis, Incorporated, which said mortgage is recorded in ... Mobile County, Alabama. Said Mortgage was transferred and assigned, and the debt thereby secured to Bayview Loan Servicing, LLC, ... by assignment recorded in ... Mobile, Alabama; and
“WHEREAS, default was made in the payment of the indebtedness so secured by the aforesaid mortgage, and the said Bayview Loan Servicing, LLC as transferee, did declare all of the indebtedness secured by the said mortgage, due and payable, and said mortgage subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage in accordance with the terms thereof ...; and
“WHEREAS, on March 1, 2011, the day on which the foreclosure sale was due to be held under the terms of said notice between the legal hours of sale, said foreclosure sale was duly and properly conducted, and the person conducting the sale on behalf of the mortgage[e] did offer for sale on behalf of the mortgagee and sell at public outcry ...; and
“WHEREAS, the highest and best bid obtained for the property described in the aforementioned mortgage was the bid of Steven J. Cox and Robin K. Cox, as transferee[s], in the amount of THIRTY-FIVE THOUSAND and 00/100 Dollars ($35,000.00)....
[[Image here]]
“NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS THAT:
“For and in consideration of the premises and the credit of [$85,000] on the indebtedness secured by said mortgage, ... [Bayview] ... [does] hereby grant, bargain, sell and convey unto Steven J. Cox and Robin K. Cox, and [their] successors and assigns, the [described] real property situated in Mobile County, Alabama .... ”
Robinson filed an answer and counterclaim, challenging the Coxes’ standing to prosecute their ejectment action. Robinson’s “counterclaim for declaratory judgment” averred, in pertinent part:
“1. On December 18, 2002, Ameri-vest Mortgage Services, LLC assigned to Wachovia Bank, N.A., as trustee (Bayview), 7861 Bayberry Road, Jacksonville, Florida 32256’ the vendor’s lien made the subject of this suit....
“2. On March 23, 2011, Wachovia Bank, N.A., as trustee (Bayview)’ assigned the vendor’s lien made the subject of this suit to Bayview Loan Servicing, LLC.... The foreclosure deed.... states that the foreclosure sale took place on March 1, 2011, and that plaintiffs Steven J. Cox and Robin K. Cox were the high bidders for $35,000.
“4. In fact, as set out above, the vendor’s lien made the subject of this suit was not assigned to Bayview Loan Servicing, LLC until March 23, 2011, more than three weeks after Bayview Loan Servicing, LLC supposedly foreclosed upon it. Bayview Loan Servicing, LLC thus had no power to declare the loan in default, advertise the foreclosure, or conduct the foreclosure.
“5. The foreclosure sale was thus invalid and is due to be set aside.
‘Wherefore, plaintiff requests a declaratory judgment from the Court declaring that the foreclosure sale allegedly conducted on March 1, 2011 was invalid and that the foreclosure deed to plaintiffs is null and void. Plaintiff requests such other, further relief as may be appropriate.”
*39 Subsequently, Robinson amended his counterclaim to add Bayview as a defendant.
On October 12, 2011, the Coxes filed a motion for a summary judgment. On November 10, 2011, Bayview filed a response in support of that motion to which it attached a copy of a “limited power of attorney” by which Wachovia appointed Bay-view “as its true and lawful attorney-in-fact to act in the name” of Wachovia to, among other things, “institute and prosecute judicial and non-judicial foreclosures.” On the following day Robinson filed a motion to strike the power-of-attorney document, arguing that it was not “sworn or certified” and citing Rule 56(e), Ala. R. Civ. P.[4]
On November 15, 2011, the trial court entered a summary judgment in favor of the Coxes as to possession of the property and denying Robinson’s counterclaim for a judgment declaring that the foreclosure was invalid. The trial court did not rule on Robinson’s motion to strike the power-of-attorney document filed by Bayview. On November 21, 2011, Bayview filed in the trial court a certified copy of the power-of-attorney document. Robinson did not file a motion to strike Bayview’s filing. Instead, on December 27, 2011, Robinson filed his notice of appeal regarding the summary judgment entered against him as to all claims.
In his brief to this Court on appeal, Robinson argues, relying on the opinion of the Court of Civil Appeals in Sturdivant, that the Coxes lacked standing, or failed to make a prima facie case of standing, to pursue the ejectment action. The Coxes and Bayview file briefs challenging the conclusion that an issue of standing is presented here.

II. Analysis

A. Preliminary Observations

The judgment of the Court of Civil Appeals in Sturdivant was based on the decision of, this Court in Cadle. Specifically, the Court of Civil Appeals, was bound by the holding in Cadle that a failure of an ejectment plaintiff to prove legal title or right to possession of the subject property, as prescribed by § 6-6-280(b), Ala.Code 1975, presented a question of the “standing” of that plaintiff to have brought its action in the first place. On this premise, the Court of Civil Appeals held in Sturdi-vant, as did this Court in Cadle, that the trial court lacked subject-matter jurisdiction over an action in ejectment brought pursuant to that statutory provision. Robinson, in turn, relies on the reasoning of the Court of Civil Appeals in Sturdivant in asking us to reverse the judgment of the trial court in that case (no. 1110458).
The holding in Cadle has not gone unquestioned by commentators and by members of the bench and bar, as well as by members of this Court and the Court of Civil Appeals. Indeed, four years after the opinion in Cadle was released, its author expressed concern that this Court had in fact been too “loose” in its use of the term “standing.” Although Justice Lyons did not mention Cadle in particular, he wrote in Hamm v. Norfolk Southern Ry., 52 So.3d 484 (Ala.2010):
“I concur fully in the main opinion. I write specially to address subject-matter jurisdiction. Although the parties have not raised the issue, this Court has the inherent power to address it ex mero *40 motu. Ex parte V.S., 918 So.2d 908, 912 (Ala.2005). I am able to concur in the main opinion because I conclude that the issue should be resolved in favor of finding jurisdiction. I write specially to condemn loose usage of the term ‘standing.’
“Standing implicates subject-matter jurisdiction.... Imprecision in labeling a party’s inability to proceed as a standing problem unnecessarily expands the universe of cases lacking in subject-matter jurisdiction.”
52 So.3d at 499 (Lyons, J., concurring specially). In more than one case, however, this Court has declined to revisit its holding in Cadle because it has not been expressly invited to do so. See, e.g., Ex parte McKinney, 87 So.3d 502, 511 (Ala.2011) (Shaw, J., concurring specially).
In the present cases, however, we have been expressly invited to revisit Cadle. Because of substantial concerns that have arisen regarding Cadle since it was decided and because of the integral nature of the “standing” question to the issues presented here, and in order to provide needed guidance to the bench and bar as to a complex and confusing area of the law relating to the fundamental jurisdiction of our courts, we accept the invitations extended in these cases.

B. Substantive Analysis

In Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216 (Ala.2010), this Court observed:
“[0]ur courts too often have fallen into the trap of treating as an issue of ‘standing’ that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy the injury element of a cause of action. As the authors of Federal Practice and Procedure explain:
“ ‘The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms. The [United States] Supreme Court has stated succinctly that the cause-of-action question is not a question of standing.’
“13A Charles Alan Wright, Arthur K. Miller, and Edward H. Cooper, Federal Practice & Procedure § 3531 (2008) (noting, however, that the United States Supreme Court, itself, has on occasion ‘succumbed to the temptation to mingle these questions’). The authors go on to explain:
“ ‘Standing goes to the existence of sufficient, adversariness to satisfy both Article III case-or-controversy requirements and prudential concerns. In determining standing, the nature of the injury asserted is relevant to determine the existence of the required personal stake and concrete adverseness....’
13A Federal Practice & Procedure § 3531.6 .... Cf. 13B Federal Practice & Procedure § 3531.10 (discussing citizen and taxpayer standing and explaining that ‘a plaintiff cannot rest on a showing that a statute is invalid, but must show “some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally” ’).
“In the present case, Wyeth appears to argue that the plaintiff, BCBSAL, lacks standing because, Wyeth says, BCBSAL’s allegations, even if true, would not entitle it to a recovery....
“... The question whether the right asserted by BCBSAL is an enforceable one in the first place, i.e., whether BCBSAL has seized upon a legal theory our law accepts, is a cause-of-action issue, not a standing issue.
[[Image here]]
*41 “Nor do we see that the consideration of the legal theory asserted by BCBSAL is outside the subject-matter jurisdiction of either the trial court or this Court. The courts of this State exist for the very purpose of performing such tasks as sorting out what constitutes a cognizable cause of action, what are the elements of a cause of action, and whether the allegations of a given complaint meet those elements. Such tasks lie at the core of the judicial function. See generally, e.g., Art. VI, § 139(a), Ala. Const. 1901 (vesting ‘the judicial power of the state’ in this Court and lower courts of the State); Art. VI, § 142, Ala. Const. 1901 (providing that the circuit courts of ■ this State ‘shall exercise general jurisdiction in all cases except as may otherwise be provided by lawO.... The issue Wyeth seeks to frame for this Court as one of ‘standing is, in reality, an issue as to the cognizability of the legal theory asserted by BCBSAL, not of BCBSAL’s standing to assert that theory or the subject-matter jurisdiction of this Court to consider it.”
42 So.3d at 1219-21 (some emphasis added). See also Ex parte Kohlberg Kravis Roberts & Co., 78 So.3d 959, 978-79 (Ala.2011) (quoting at length from Wyeth with approval).
Our rationale and holding in Wyeth were extended in Steele v. Federal National Mortgage Ass’n, 69 So.3d 89 (Ala.2010), to a case involving a question as to what must be proven in an ejectment action. Although the specific issue in Steele (whether a written demand upon the defendant in ejectment was a prerequisite to the action) was different than the specific issue presented here (the validity of the legal title held by the ejectment plaintiff), Steele is analogous to the present case. As we explained in Steele:
“Although Jeffery has framed this argument in standing terms, Fannie Mae’s standing to bring this action has not actually been implicated. See Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1220 (Ala.2010) (‘ “[The appellee] appears to argue that plaintiffs lack standing because they have no legal right to the relief they seek. [The appellee] has confused standing with failure to state a claim. The two are conceptually distinct: when standing is at issue, the court asks whether the plaintiffs are the proper parties to bring the action, whereas failure to state a claim focuses not on the parties but on the existence of a cause of action fie., on the merits). Kirby v. Department of HUD, 675 F.2d 60, 63-64 (3d Cir.1982); Bowman v. Wilson, 672 F.2d 1145, 1151 n. 10 (3d Cir.1982).’” (quoting Angleton v. Pierce, 574 F.Supp. 719, 726 (D.N.J.1983))).”
69 So.3d at 91 n. 2 (final emphasis added). Cf. Ex parte McKinney, 87 So.3d at 509 n. 7 (observing that our courts “occasionally” have been “guilty of ‘“blur[ring]”’ the lines between the distinct concepts of standing and real party in interest” (quoting Ex parte Sterilite Corp. of Alabama, 837 So.2d 815, 819 (Ala.2002), quoting in turn Battle v. Alpha Chem. & Paper Co., 770 So.2d 626, 634 (Ala.Civ.App.2000))). See also Ex parte Green, 58 So.3d 135, 153 (Ala.2010) (Murdock, J., writing specially) (“[0]ur courts have on occasion referred in jurisdictional terms to that which does not in fact go to the fundamental authority of the court to decide a case.” (citing 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531 (3d ed.2008))); Jerome A. Hoffman, The Malignant Mystique of “Standing, ” 73 Ala. Law. 360 (2012).
The decision of the Court of Civil Appeals in Sturdivant largely reflects an obligatory adherence to this Court’s deci *42 sion in Cadle. Nonetheless, in his special writing in Sturdivant, Judge Pittman boldly declared that Cadle was simply decided incorrectly: “Cadle actually presented a question of the plaintiffs inability to prove the allegations of its complaint rather than a question of standing.” Sturdivant, 159 So.3d at 27 (Pittman, J., dissenting) (emphasis added). In an erudite discussion, Judge Pittman explained the false distinctions and inconsistencies that have been generated by the Court of Civil Appeals in an effort to accommodate, or overcome, on a case-by-case basis, the holding in Cadle:
“Notably, in both Hawkins v. LaSalle Bank, N.A., 24 So.3d 1143 (Ala.Civ.App. 2009), and Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Ala.Civ.App.2010) (overruling Hawkins), the ejectment defendant raised the affirmative defense that the foreclosure sale and deed were invalid. In 2009, this court held in Hawkins that, if the foreclosure sale and deed were invalid, then the purchaser had no standing to sue in ejectment. In 2010, we concluded in Berry that an irregularity in the foreclosure proceeding, such as inadequacy of the price paid at a foreclosure sale, did not implicate the standing of the purchaser to bring an ejectment action; instead, we held, that alleged irregularity constituted an affirmative defense. Now, in 2011, the main opinion returns to the 2009 ‘standing analysis that we rejected in 2010, based on the fact that the irregularity in the present case is more ‘fundamental’ than the irregularities asserted in either Hawkins or Berry. I do not disagree that the irregularity discussed in the main opinion is ‘fundamental’ and that, had it been properly raised as an affirmative defense, it would have resulted in the invalidation of the foreclosure sale. But the same is true of the irregularities present in Hawkins and Berry; upon proper proof of the irregularities asserted in those cases, the foreclosure sales would also have been invalidated.
“By altering its analysis twice in three years, this court is contributing to the instability of the law concerning mortgage foreclosures, an area of practice that is already fraught with too much instability. I cannot account for the difference in the way the main opinion treats the defect in the foreclosure sale that forms the basis for the ejectment action in this case from the way this court treated the defect in Berry — both of which defects, if proved, would result in invalidation of the foreclosure sale — other than to surmise that we have been led astray by the standing analysis in Cadle, a decision that, as I have already stated, I think is misguided and should be overruled.”
Sturdivant, 159 So.3d at 28-29 (Pittman, J., dissenting) (some emphasis added).
In Byrd v. MorEquity, Inc., 94 So.3d 378 (Ala.Civ.App.2012), another ejectment case, two of the five judges on the Court of Civil Appeals concurred in the rationale in part and concurred in the result; one judge concurred only in the result. The two judges concurring in the rationale in part wrote to again explicitly challenge the correctness of this Court’s holding in Ca-dle that a deficiency in the title of a foreclosing authority did not go simply to the merits of a foreclosure purchaser’s claim to the property,, but actually deprived the purchaser of “standing” to assert and try to prove his claim. Judge Pittman again offered a particularly cogent analysis:
“I agree that the summary judgment in favor of MorEquity, Inc., is due to be reversed and the cause remanded because MorEquity failed to establish that there was no factual dispute as to whether it was the assignee of the mort *43 gage before it initiated the foreclosure proceedings against the Byrds. In my judgment, that failure simply means that MorEquity did not make a prima fade showing that it could satisfy one of the elements of its ejectment claim, not that MorEquity failed to demonstrate that it had standing to sue.
“I believe that this case and others like it, see, e.g., Ex parte McKinney, 87 So.3d 502 (Ala.2011); Cadle Co. v. Shabani, 950 So.2d 277 (Ala.2006); and Sturdivant v. BAC Home Loans Servicing, LP, 159 So.3d 15 (Ala.Civ.App.2011), present questions of an ejectment plaintiff’s inability to prove the allegations of its complaint rather than questions of standing. See Ex parte McKinney, 87 So.3d at 512 (Murdock, J., dissenting); and Sturdivant, 159 So.3d at 40 (Pittman, J., dissenting).
“ ‘As [our supreme court] recently observed: “[0]ur courts too often have fallen into the trap of treating as an issue of ‘standing’ that which is merely a failure to state a cognizable cause of action or legal theory, or a failure to satisfy [an] element of a cause of action.” Wyeth, Inc. v. Blue Cross & Blue Shield of Alabama, 42 So.3d 1216, 1219 (Ala.2010). Compare Steele v. Federal Nat’l Mortg. Ass’n, 69 So.3d 89, 91 n. 2 (Ala.2010) (citing Wyeth as authority for rejecting the appellant’s suggestion that a plaintiffs failure to have made a demand for possession before bringing an ejectment action presented an issue of standing).’
“Ex parte McKinney, 87 So.3d at 514 (Murdock, J., dissenting).
“Our supreme court has determined that standing ‘implicates [a trial court’s] subject-matter jurisdiction.’ Ex parte Howell Eng’g & Surveying, Inc., 981 So.2d 413, 418 (Ala.2006); see also Hamm v. Norfolk Southern Ry., 52 So.3d 484, 499 (Ala.2010) (Lyons, J., concurring specially) (citing Riley v. Pate, 3 So.3d 835, 838 (Ala.2008), and State v. Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028 (Ala.1999)). That court has also explained that subject-matter jurisdiction ‘concerns a court’s power to decide certain types of cases,’ Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006), which power is derived from the constitution and statutes of Alabama. Id.”
Byrd, 94 So.3d at 383 (Pittman, J., concurring in the rationale in part and concurring in the result) (some emphasis added).[5] See also Byrd, 94 So.3d at 384 (Bryan, J., concurring in the rationale in part and concurring in the result) (similarly rejecting the idea that an ejectment plaintiffs failure to allege or prove title was an issue of that plaintiffs “standing” to bring the ejectment action).
*44 The problem identified by Judge Pittman and others is a function of the fact that the concept of standing was developed by the United States Supreme Court for “public law” cases, see, e.g., Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), not “private law” cases. In the absence of defined elements as exist in established private causes of action, the concept of standing is used to differentiate between those complaints regarding governmental action that are shared generally by the citizenry and that therefore must be addressed politically and those complaints that reflect a sufficient specific injury and consequent adverseness to make for a “case” that is within the purview of the judicial branch. Accordingly, the concept appears to have no necessary role to play in respect to private-law actions, which, unlike public-law cases (for example, a suit against the Secretary of Interior to construe and enforce an environmental regulation designed to protect wildlife), come with established elements that define an adversarial relationship and “controversy” sufficient to justify judicial intervention. In private-law actions (e.g., a claim of negligence or, as here, a statutory claim for ejectment), if the elements are met, the plaintiff is entitled to judicial intervention; if they are not met, then the plaintiff is not entitled to judicial intervention. Everything necessary to justify judicial intervention, by definition, inheres in those elements that we say constitute a “cause of action” in and by our courts. What need is there to distill from those elements and label some additional gate-keeping notion? At a very fundamental level, the concept of standing is already embodied in the various elements prescribed, including the common requirement of proof of a sufficient existing or threatened injury.
Professors Wright and Miller are just two of the commentators who have recognized that the concept of standing was formulated by the United States Supreme Court in the field of “public law” — constitutional or other challenges to the actions of officials or administrative agencies — and is out of place in private-law cases:
“In its flowering, subsequent withering, eventual revival, and occasionally complex application, the standing concept that there is a need to establish an entitlement to judicial action, separate from proof of the substantive merits of the claim advanced, has been largely a creature of twentieth century decisions of the federal courts. More importantly, it has been very much tied to litigation asserting the illegality of governmental action. The assertion may be that executive or administrative action goes beyond the limits of statutory authorization or constitutional limits, or that a statute exceeds constitutional limits. Claims of private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest, if anyone has; such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest.
[[Image here]]
“... The fascination of complex standing doctrine and the concern to observe constitutional limits on the judicial power occasionally lead courts to invoke public-law concepts to resolve concerns that are better addressed ■through private-law concepts. In part, these decisions reflect a longstanding common-law practice. It may be useful to avoid decision whether a defendant has violated someone’s rights by ruling that in any event the present plaintiff is not entitled to a remedy. That approach may be expressed by concluding that the plaintiff lacks standing. The difficulty arises when these questions of *45 private right are considered through the distinctive public-law doctrines of standing. It would be better to rely directly on cause-of-action, real-party-in-interest, capacity, intervention, and like concepts. Many illustrations are offered [below] in an effort to encourage greater care.
“The question whether the law recognizes the cause of action stated by a plaintiff is frequently transformed into inappropriate standing terms. The Supreme Court has stated succinctly that the cause-of-action question is not a question of standing. The Court itself, however, also has succumbed to the temptation to mingle these questions. Lower-court decisions display a number of variations. Some clearly separate standing from the questions whether the plaintiff has a claim or whether the defendant has a valid defense. Other opinions, however, invoke Article III or ‘jurisdictional’ concepts of standing to address the question whether the plaintiff has a claim. At times, a court may recognize this confusion but fail to cure it. Many opinions refer to ‘standing’ in more general terms as a means of deciding whether the plaintiff has the claim or right asserted. Similarly, a court may conclude both that there is no claim or right and that there is no standing, or conversely conclude that there is standing because there is a claim. Standing concepts may be used in ruling that the plaintiff has pursued the claim against the wrong defendant, or that the defendant is immune from the claim.
“The lack of finality required for review of an administrative action, commonly addressed as a matter of ripeness, may instead be expressed in standing terms. And some forfeiture decisions seem to require a claimant to make a preliminary showing on the merits in order to demonstrate ‘standing to challenge the forfeiture.
“These conceptual confusions make unnecessary work. Ordinarily little other harm is done, apart from generating potentially confusing precedent on what are represented as standing issues. But conceptual labels may carry real consequences. Lack of ‘standing’ to raise a federal claim may persuade a court that it lacks subject-matter jurisdiction and cannot exercise supplemental jurisdiction. A decision characterized in standing terms may not carry the claim-preclusion consequences that should flow from what in fact is a dismissal for failure to state a claim.”
13A Federal Practice and Procedure § 8531 (footnotes omitted; emphasis added). See also, e.g., K-B Trucking Co. v. Riss Int’l Corp., 763 F.2d 1148, 1154 n. 7 (10th Cir.1985) (“ ‘ “The standing question arises in the realm of public law, when governmental action is attacked on the ground that it violates private rights or some constitutional principle....’” C. Wright, The Law of Federal Courts 452-53 n. 2 (4th ed. 1983) (quoting Kent v. Northern California Regional Office of American Friends Service Committee, 497 F.2d 1325, 1329 (9th Cir.1974)).”).
Professors Wright and Miller go on to explain:
“As to private disputes, it would be good to displace standing by direct inquiry into the existence of a claim for an available remedy. Damages claims provide the easiest example. Ordinarily there is no question as to the standing of a plaintiff who claims a personal right to a damages remedy. Remedial benefit is apparent, and we are accustomed to thinking of injury and causation as part of the substantive and remedial calculus.... Use of standing *46 terms in this setting may divert attention from the proper remedial concerns, and it might be discarded without loss. Claims for injunctive or declaratory relief between private parties invoke different remedial concerns, but again courts are accustomed to addressing these concerns directly.”
13A Federal Practice and Procedure § 3531.6 (footnotes omitted; emphasis added).
The concerns expressed by Professors Wright and Miller also have been expressed by a professor with a more intimate awareness of Alabama cases and the invocation therein of the doctrine of standing:
“Lack of statutory authorization best supports analysis as the lack of a claim upon which relief can be granted, that is, a claim under Rule 12(b)(6), [Ala. R. Civ. P.,] not a claim over which the forum court lacks subject matter jurisdiction, that is, not a claim under Rule 12(b)(1). To invoke the word ‘standing,’ with all of its federal constitutional law baggage, creates the risk that this public law proposition will spread to private law contexts where it never belongs, rendering the filing of ill-conceived but not irredeemable private law complaints not merely mistaken acts, reparable by amendment, but void acts, not reparable by amendment. The proposition is dangerous because, by the same kind of casual thinking, the word ‘standing’ unnecessarily invoked in the proposition can be erroneously equated with ‘real party in interest’ or ‘failure to state a claim.’ This simple, though doctrinally unjustified, extension could swallow up Rule 12(b)(6), Rule 17[, Ala. R. Civ. P.,] and the whole law of amendments.”
Hoffman, The Malignant Mystique of “Standing, ” 73 Ala. Law. at 362.

III. Conclusion

Each of the plaintiffs before us attended a foreclosure auction, was the successful bidder at that auction, paid money for the auctioned property, and received a foreclosure deed to the property. With deed in hand, each plaintiff now brings an action under Alabama law, specifically § 6-6-280(b), Ala.Code 1975, claiming good title to the property at issue and the right to eject the original debtor. We are clear to the conclusion that the trial courts had subject-matter jurisdiction over these causes, including any issue as to the validity in fact of the plaintiffs’ title to the property, this being one of the elements of proof required in an ejectment action.
If in the end the facts do not support the plaintiffs, or the law does not do so, so be it — but this does not mean the plaintiffs cannot come into court and allege, and attempt to prove, otherwise. If they fail in this endeavor, it is not that they have a “standing” problem, it is, as Judge Pittman recognized in Sturdivant, that they have a “cause of action” problem, or more precisely in these cases, a “failure to prove one’s cause of action” problem. The trial court has subject-matter jurisdiction to “hear” such “problems” — and the cases in which they arise. To the extent Cadle holds otherwise, i.e., that a plaintiff in an ejectment action lacks “standing” if it cannot prove one of the. elements of its claim (namely, legal title or the right to possession of the property) and that the trial court in turn lacks subject-matter jurisdiction over that claim — it and other cases so holding are hereby overruled.
Based on the foregoing, we reverse the judgment of the Court of Civil Appeals in case no. 1110373 and remand the cause for further consideration consistent with this opinion. We affirm the judgment of the trial court in case no. 1110458.
*47 1110373 — REVERSED AND REMANDED.
STUART, PARKER, SHAW, and WISE, JJ., concur.
MOORE, C.J., and BOLIN and MAIN, JJ., concur in the result.
BRYAN, J., recuses himself.*
1110458 — AFFIRMED.
STUART, PARKER, SHAW, and WISE, JJ., concur.
MOORE, C.J., and BOLIN, MAIN, and BRYAN, JJ., concur in the result.

. The record does not reflect which was executed and delivered first, the foreclosure deed or the assignment. The absence of such information from the record presumably is a function of the fact that the foreclosure was not challenged by Sturdivant in the trial court on the ground that the assignment of MERS’s mortgage interest was not made to BAC in a timely manner and the trial court was not asked to decide the issue whether the assignment actually preceded the conveyance of the property to the foreclosure purchaser.

. Only Ronald C. Robinson participated in the litigation and filed this appeal.

. For all purposes relevant to this opinion, the term “mortgage” includes "any ... instrument intended to secure the payment of money, such as an instrument which includes a vendor's lien.” § 35-10-11(1), Ala.Code 1975.

. The copy of the document attached to Bay-view’s submission was dated 2006. Although, by its terms, it did purport to give Bayview a power of attorney as to the mortgage rights held by Wachovia in land that was part of certain trusts, neither the document nor any other evidence before the trial court spoke to the question whether the property at issue in this case was part of the corpus of any of those trusts.

. In Ex parte Seymour, 946 So.2d 536, 538 (Ala.2006), to which Judge Pittman referred in his special writing in Byrd, this Court stated:
"Subject-matter jurisdiction concerns a court’s power to decide certain types of cases. Woolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911) (' "By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought.” ’ (quoting Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870))). That power is derived from the Alabama Constitution and the Alabama Code. See United States v. Cotton, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (subject-matter jurisdiction refers to a court's ‘statutory or constitutional power' to adjudicate a case). In deciding whether Seymour’s claim properly challenges the trial court’s subject-matter jurisdiction, we ask only whether the trial court had the constitutional and statutory authority to try the offense with which Seymour was charged and as to which he has filed his petition for certiorari review."