MENDHEIM, Justice.
Evangela Skelton ("Angel"), as personal representative of the estate of Brian Lee Skelton, Sr., deceased ("the estate"), requests that this Court issue a writ of mandamus directing the Jefferson Circuit Court (1) to vacate its order denying her motion to dismiss an action filed in the circuit court by Joshua M. Council ("Joshua") and (2) to enter an order dismissing Joshua's action on the ground of abatement.
*146 We grant the petition and issue the writ.
The materials submitted by the parties show the following. Frederick Tildon Skelton, Jr. ("Frederick Jr."), died on June 7, 1979. Frederick Jr. was survived by his wife, Rheta S. Skelton ("Rheta"), and four children: Brian Lee Skelton, Sr. ("Brian Lee"), Frederick Tildon Skelton III ("Frederick III"), Loretta Joyce Skelton ("Loree"), and Cindy Marie Skelton ("Cindy"). Frederick Jr.'s will was admitted to probate in the Birmingham Division of the Jefferson Probate Court on October 7, 1979.
Frederick Jr.'s will included provisions for a testamentary trust known as the Frederick Tildon Skelton, Jr., Family Trust ("the trust"). The trust apparently was funded during the administration of Frederick Jr.'s estate, which was closed by final consent settlement on or about April 7, 2000. The original trustee of the trust was Rheta. The trust named Frederick III as successor trustee to Rheta and Brian Lee as successor trustee to Frederick III. The trust named no successor trustee to Brian Lee.
Under the terms of the trust, Rheta was to receive the net income of the trust during her life. The trust further provided:
"2. The family trust shall terminate upon the death of my said wife and the then principal of the trust, together with any undistributed income thereof (all of which is hereinafter called 'such property'), shall be held or disposed of as follows:
"A. If issue of mine is living at the termination of the family trust, the trustee shall divide such property into a sufficient number of equal shares so that there shall be set aside one equal share for each child of mine living at the termination of the trust, and one equal share for the issue collectively living at the termination of the trust of each child of mine who has died prior to the termination of the trust leaving issue living at the termination of the trust.
"With respect to each child of mine living at the termination of the trust, the trustee shall transfer, convey and pay over, free of trust, the share so set aside for such child to him or her if he or she has attained the age of thirty (30) years at the termination of the trust, otherwise the trustee shall continue to hold such share in trust, nevertheless, as a separate trust for such child's primary benefit in accordance with the provisions set out in Item Eight hereof.
"With respect to each child of mine who has died prior to the termination of the trust leaving issue living at the termination of the trust, the trustee shall further divide the shares set aside for the living issue collectively of such deceased child among such living issue, in equal shares per stirpes and with respect to each living issue entitled to a portion shall transfer, convey and pay over, free of trust, the portion to which he or she is so entitled to him or her, if he or she has attained the age of twenty-one (21) years, otherwise, the trustee shall continue to hold the portion to which he or she is so entitled, in trust, nevertheless, as a separate trust for his or her primary benefit in accordance with the provisions set out in Item Nine hereof."
Rheta died on December 13, 2015. Rheta was predeceased by Frederick III, who died on January 1, 2014. Thus, Brian Lee became the successor trustee of the trust following Rheta's death. However, Brian Lee died on July 2, 2016, before dividing the trust property into shares and distributing those shares pursuant to the terms *147 of the trust and before making a final settlement of the trust. See Ala. Code 1975, § 19-3B-205(a) (court proceeding for final settlement); see also Ala. Code 1975, § 19-3B-111(d)(7) (authorizing final settlement by consent under certain circumstances). Brian Lee was survived by his wife, Angel, by two adult children, Brian Lee Skelton, Jr. ("Brian Jr."), and Taylor Skelton Madsen ("Taylor"), and by a minor child, Olivia Jade Skelton ("Olivia").
On July 26, 2016, Angel, Brian Jr., and Taylor filed a "Petition for Approval of Appointment of Successor Trustee for Testamentary Trust" ("the petition for appointment") in the Bessemer Division of the Jefferson Probate Court ("the probate court").[1] The petition for appointment included allegations that Angel, Brian Jr., and Taylor were "the adult heirs-at-law and next-of-kin of Brian Lee" and that they were "devisees and/or beneficiaries of Brian's" will. The petition for appointment also alleged that Rheta was domiciled within the boundaries of the Bessemer Division of Jefferson County when she died, that the trust had been administered within those boundaries, and that,
"after the death of [Rheta] in December, 2015, the Trust was not terminated and divided ... because a final income tax return for the Trust had not yet been filed and outstanding expenses of the Trust are yet to be paid, and thus, it continues to exist as one aggregate Trust. On information and belief, the Trust owns a small investment account and valuable stock in The SOUTH HAVEN CORPORATION ('South Haven')."
The petition for appointment further alleged:
"8. ... [Frederick Jr.'s] Will did not name any successor to Brian [Lee] as Trustee of the Trust, and thus there is no party presently having appropriate authority to serve as Trustee of the Trust, including without limitation, to vote or take other action with respect to any of the Trust's stock in South Haven and/or to proceed with a termination of the Trust.
"9. Brian [Lee] was over 30 years old at his death. The beneficial interest of Brian [Lee] in and to the Trust had vested absolutely in him on the Termination date, i.e., December 13, 2015. Thus, the beneficial interest of Brian [Lee] in and to the Trust is an asset of his probate estate, and is due to be distributed, outright and free of trust, to an appropriate fiduciary acting on behalf of Brian [Lee's] Estate.
"10. Petitioners have standing to request the relief sought in this Petition as the heirs-at-law and next-of-kin of Brian [Lee] and/or as the named devisees/beneficiaries of Brian [Lee's] Will. Brian [Lee's] Will appoints Angel as the Personal Representative of Brian [Lee's] Estate ..., and Petitioners anticipate the issuance of Letters Testamentary to Angel for Brian [Lee's] Estate following the Court's hearing in Brian [Lee's] Estate, with the result that Angel, in her fiduciary capacity as the Personal Representative of the Estate of Brian [Lee] may be substituted for or added to Petitioners as a moving party with standing to seek the relief sought herein."
*148 The petition for appointment alleged that Frederick III and Cindy were deceased and that the following other persons had an interest in the trust and were to be made parties to the proceedings:
1. Frederick T. Skelton IV ("Frederick IV") and Brian Rutledge Skelton ("Brian Rutledge"), who were the children of Frederick III and who were both over the age of 21 on December 13, 2015;
2. Loree, who was over the age of 30 on December 13, 2015; and
3. Joshua, who was over the age of 21 on December 13, 2015, and who was the only child of Cindy, who died on July 30, 2012.
The petition for appointment requested that the probate court appoint a successor trustee and that the court direct that trustee to proceed with dividing the trust property into appropriate shares, to distribute the trust property as required by the terms of the trust, and "to take all other such action as may be appropriate to administer the Trust pursuant to [its] terms ... and prudent fiduciary practice, including, without limitation, exercising control over the ... stock or other ownership interest in South Haven."
On August 18, 2016, Joshua, as a beneficiary of the trust, filed a "Petition for Termination" ("the petition for termination") in the circuit court. The petition for termination named as respondents Brian Lee's estate; the trust; Loree; Frederick IV; and Brian Rutledge. The petition for termination alleged that the trust should have terminated on Rheta's death and requested the following relief:
"A. That this Court find, order, and decree that the Trust be terminated;
"B. That this Court find, order, and decree that the assets of the Trust be distributed to the Beneficiaries pursuant to the terms of the Trust; and
"C. Petitioner further requests any other appropriate legal or equitable remedy to which he may be entitled."
On August 23, 2016, Angel filed a "Petition for Letters Testamentary Without Bond" ("the petition for letters testamentary") in the probate court as to Brian Lee's estate. The petition for letters testamentary alleged that Brian Lee's will "ha[d] been ... duly probated and admitted to record" in the probate court and that Angel was nominated as personal representative in that will. The petition for letters testamentary requested that the probate court "take judicial notice of the probate of the will" and issue letters testamentary to Angel. On the same day that Angel filed the petition for letters testamentary, the probate court issued letters testamentary appointing her as the personal representative of Brian Lee's estate.[2]
On August 24, 2016, Angel, as personal representative of Brian's Lee's estate, filed a motion in the probate court requesting that she be substituted in her capacity as personal representative for herself in her individual capacity, for Brian Jr., and for Taylor as the petitioner in the petition for appointment. The probate court granted Angel's motion to substitute.
On August 31, 2016, Angel, as personal representative of Brian Lee's estate, filed a motion in the circuit court requesting that that court dismiss the petition for termination. In pertinent part, Angel's motion alleged:
*149 "Given that the filing of the Petition in the Probate Court by Angel on July 26, 2016, predated the filing of the present action on August 18, 2016, the Probate Court already has acquired exclusive subject matter jurisdiction over all matters pertaining to the Trust, including the relief sought in the Petition for Termination filed in this action. [Joshua's] Petition for Termination is, in reality, a compulsory counterclaim to Angel's July 26, 2016 Petition for Successor Trustee in Probate Court, and is, therefore due to be abated and dismissed, pursuant to Ala. Code [1975,] § 6-5-440."
On September 1, 2016, Joshua amended the petition for termination to add a claim against Brian Lee's estate for damages based on alleged breaches of fiduciary duty by Brian Lee, while he was trustee of the trust. Joshua alleged that Frederick Jr. had owned all 492 shares of stock of South Haven Corporation and that his will "left around 250 (51%) shares in South Haven Corp. to [Rheta] ... and around 242 (49%) South Haven Corp. shares to the Trust." Joshua further alleged that after Rheta's death the trust should have been terminated, but that Brian Lee "refused to terminate or distribute the assets held in the Trust to the Beneficiaries, including the South Haven Corp. shares" and that Brian Lee "used his position as Trustee ... to plunder and misappropriate the assets of the Trust, including the assets of South Haven Corp., for his own personal use and benefit to the detriment of the other Beneficiaries." Joshua requested that the circuit court enter a judgment against Brian Lee's estate for compensatory and punitive damages, and Joshua repeated his request that the circuit court order that the trust be terminated and the trust property distributed to the beneficiaries.[3]
On September 14, 2016, Angel, as personal representative of Brian Lee's estate, filed a motion in the circuit court requesting that that court dismiss the petition for termination. Angel's motion again asserted that dismissal was warranted under § 6-5-440, Ala. Code 1975.
On March 10, 2017, Joshua filed a response in the circuit court to Angel's motion to dismiss. Joshua argued that his action should not be dismissed because, he said, Angel, Brian Jr., and Taylor lacked standing to file the petition for appointment when it was filed and, therefore, the probate court did not acquire subject-matter jurisdiction to adjudicate the petition for appointment. Instead, Joshua argued, his petition for termination was the first-filed action as to the trust because the action was filed before Angel was appointed personal representative of Brian Lee's estate.
On April 2, 2017, Angel filed a reply. In part, Angel noted that Joshua's reliance on the doctrine of standing was misplaced in light of this Court's recent precedents:
"The Alabama Supreme Court has recently taken a significantly more restrictive view of what constitutes 'standing' to bring an action. As a result, it appears that 'standing' now only has application to cases ... involving suits against the government ('public-law cases'). See *150 Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 44 (Ala. 2013) ('[T]he concept [of standing] appears to have no necessary role to play in respect to private-law actions, which, unlike public-law cases (for example, a suit against the Secretary of Interior to construe and enforce an environmental regulation designed to protect wildlife), come with established elements that define an adversarial relationship and "controversy" sufficient to justify judicial intervention. In private-law actions (e.g., a claim of negligence or, as here, a statutory claim for ejectment), if the elements are met, the plaintiff is entitled to judicial intervention; if they are not met, then the plaintiff is not entitled to judicial intervention.'); see also Gardens at Glenlakes Prop. Owners Ass'n, Inc. v. Baldwin Cty. Sewer Serv., LLC, [225 So.3d 47, 53] (Ala. ... 2016) ('[I]n Ex parte BAC Home Loans Servicing, LP, ..., this Court again examined the concept of standing and cautioned that the concept is generally relevant only in public-law cases.') [ (plurality opinion) ]; Ex parte Wilcox Cty. Bd. of Educ., [218 So.3d 774, 779] n.7 (Ala. ... 2016) ('In Ex parte BAC Home Loans Servicing, LP, ... we clarified that the concept of standing was developed " 'for public law' cases, ... not 'private law' cases," and thus removed the gate-keeping function of standing from private-law cases.')."
According to Angel, the probate court had subject-matter jurisdiction over the petition for appointment when that petition was filed and her subsequent appointment as personal representative of the estate related back so as to authorize her filing of the petition.
On April 3, 2017, the circuit court entered an order denying Angel's motions to dismiss. The circuit court stated its rationale for the denial as follows:
"It is undisputed that on July 26, 2016, when Angel's Petition [for Appointment] was filed [in the probate court], no one had been appointed as the personal representative for the Estate of Brian Lee Skelton. In fact, Letters of Testamentary were not issued to Angel until August 23, 2016. Accordingly, this Court finds that Angel lacked the standing to commence the action [in the probate court]."
Angel then filed the petition for a writ of mandamus with this Court.
Standard of Review
Alabama's abatement statute, § 6-5-440, Ala. Code 1975, provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
"Mandamus is the appropriate remedy to correct a trial court's failure to properly apply § 6-5-440." Ex parte J.E. Estes Wood Co., 42 So.3d 104, 108 (Ala. 2010).
" 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' "
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala. 2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995) ). "When the facts underlying a motion filed pursuant to § 6-5-440 are undisputed ... our review of the application of the law to the facts is de novo." Ex parte Metropolitan Prop. & Cas. Ins. Co., 974 So.2d 967, 969 (Ala. 2007).
*151 Analysis
Angel argues that the circuit court erred in not applying § 6-5-440 so as to dismiss the petition for termination. We agree.
First, as Angel correctly argues, the doctrine of standing (particularly as a jurisdictional concept) has no application in this private-law case. See Ex parte BAC Home Loans Servicing, LP, 159 So.3d 31, 44 (Ala. 2013) ; see also Ex parte Wilcox Cty. Bd. of Educ., 218 So.3d 774, 779 n.7 (Ala. 2016). No impediment to subject-matter jurisdiction existed as to Angel when she filed the petition for appointment in the probate court. And, because no jurisdictional impediment existed as to Angel and the petition for appointment, her subsequent appointment as personal representative related back to her filing of that petition. See Ala. Code 1975, § 43-2-831 ("The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter."); see also Rule 17(a), Ala. R. Civ. P. ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.").[4]
Second, as to the issue of abatement, " '§ 6-5-440 provides that when two actions are commenced at different times, the pendency of the first-filed action "is a good defense" to the second-filed action.' " Washington Mut. Bank, F.A. v. Campbell, 24 So.3d 435, 437 n.2 (Ala. 2009) (quoting First Tennessee Bank, N.A. v. Snell, 718 So.2d 20, 27 (Ala. 1998) (See, J., concurring in the result) ). We have applied § 6-5-440 to a defendant's claims, specifically to compulsory counterclaims:
"[A] compulsory counterclaim is considered an 'action' for purposes of § 6-5-440. Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So.2d 598, 599 (Ala. 1993). As this Court has noted:
" 'This Court has held that the obligation ... to assert compulsory counterclaims, when read in conjunction with § 6-5-440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same party, is tantamount to making the defendant with a compulsory counterclaim in the first action a "plaintiff" in that action (for purposes of § 6-5-440 ) as of the time of its commencement.... Thus, the defendant subject to the counterclaim rule who commences another action has violated the prohibition in § 6-5-440 against maintaining two actions for the same cause.'
" Ex parte Breman Lake View Resort, L.P., 729 So.2d 849, 851 (Ala. 1999). See also [ Ex parte] University of South Alabama Found., 788 So.2d [161] at 165 [ (Ala. 2000) ] (holding that a party in an action pending in a federal court was *152 subject to the counterclaim rule and thus violated § 6-5-440 by commencing another action in a state court); Ex parte Parsons & Whittemore Alabama Pine Constr. Corp., 658 So.2d 414 (Ala. 1995) (holding that the prosecution in a subsequent action of claims that had been compulsory counterclaims in a previously filed declaratory-judgment action violated § 6-5-440 )."
Ex parte Norfolk S. Ry., 992 So.2d 1286, 1289-90 (Ala. 2008) ; see also Ex parte Brooks Ins. Agency, 125 So.3d 706, 710 (Ala. 2013) (holding that § 6-5-440 mandated the dismissal of an insured's claims filed in a state-court action because those claims were compulsory counterclaims in the insurer's first-filed, declaratory-judgment action in federal court).
The present case involves a trust with various beneficiaries (including Angel, as personal representative of the estate, and Joshua) having claims to or interests in the trust and its proper administration, termination, and final distribution. Both the petition for appointment and the petition for termination arise out of the deaths of Rheta and Brian Lee and concern the winding up and final distribution of the property of the trust, which had no named trustee to perform those acts after Brian Lee's death. The petition for appointment sought an order from the probate court appointing a successor trustee. But the petition for appointment also requested that the probate court direct the trustee to proceed with the division of the trust property into appropriate shares, to distribute the same as required by the terms of the trust, and "to take all other such action as may be appropriate to administer the Trust pursuant to [its] terms ... and prudent fiduciary practice, including, without limitation, exercising control over the ... stock or other ownership interest in South Haven."
The petition for termination requested an order from the circuit court decreeing "that the Trust be terminated" and "that the assets of the Trust be distributed to the Beneficiaries pursuant to the terms of the Trust." As noted above, Joshua amended the petition for termination to include a claim for damages against Brian Lee's estate based on Brian Lee's alleged breaches of fiduciary duty as trustee of the trust. In other words, the petition for termination sought, in part, the same substantive relief as to the trust as was sought in the petition for appointment, particularly the final division and distribution of the trust property according to the terms of the trust.
We note that the administration of the trust did not automatically end upon Rheta's death. As one well recognized treatise notes:
"At such time when the trust is terminated in any way, whether by the expiration of its fixed term or by revocation or court decree or otherwise, the trust nevertheless continues for a reasonable time during which the trustee has power to perform such acts as are necessary to the winding up of the trust and the distribution of the trust property as are expressly given or reasonably implied from the trust instrument....
"The trustee has the duty to carry out this phase of the trust administration with reasonable care and prudence."
Mary F. Radford, George Gleason Bogert, & George Taylor Bogert, The Law of Trusts and Trustees § 1010 (3d ed. 2006) (footnotes omitted). For example, after an event terminating a trust, the trustee may be required to determine the beneficiaries of the trust and what each beneficiary's share of the trust consists of, to liquidate trust property for purposes of division and distribution, to file final tax returns for the trust, to prepare conveyancing documents for distributions to the beneficiaries, and *153 to prepare necessary documentation for the final settlement of the trust administration. Id.; see also Restatement (Third) of Trusts § 89 (2007) ("The powers of a trustee do not end on the trust's termination date but may be exercised as appropriate to the performance of the trustee's duties in winding up administration, including making distribution, in a manner consistent with the purposes of the trust and the interests of the beneficiaries.").[5] Alabama law recognizes these principles. Section 19-3B-816(a)(26), Ala. Code 1975, specifically authorizes a trustee to, "on termination of the trust, exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it." Also, § 19-3B-817(b), Ala. Code 1975, provides:
"Upon the occurrence of an event terminating or partially terminating a trust, the trustee shall proceed expeditiously to distribute the trust property to the persons entitled to it, subject to the right of the trustee to retain a reasonable reserve for the payment of debts, expenses, and taxes."
In the present case, the trust, by its terms, was to terminate upon Rheta's death, and after that event, the trustee was to hold or dispose of the trust principal and any undistributed income by dividing that property into various shares and administering or distributing those shares as otherwise required by the terms of the trust. The reasons offered in the petition for appointment for the appointment of a successor trustee to Brian Lee included that a final income-tax return had not been filed for the trust, that outstanding trust expenses had not been paid, and that the trust property required division and distribution. In other words, the need for a trustee did not cease upon Rheta's death or Brian Lee's death. Even after Brian Lee's death, a trustee still was needed to complete the final division and distribution of the trust property -- a result sought in both the petition for appointment and the petition for termination -- in addition to other alleged matters.
As noted above, this Court has applied § 6-5-440 in the context of a compulsory counterclaim. In determining whether a counterclaim is compulsory, this Court has applied the logical-relationship test.
" 'A counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim.' Committee Comments on 1973 adoption of Rule 13, [Ala. R. Civ. P.,] ¶ 6. Under the logical-relationship standard, a counterclaim is compulsory if '(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts.' Ex parte Canal Ins. Co., 534 So.2d 582, 584 (Ala. 1988) (quoting Brooks v. Peoples Nat'l Bank of Huntsville, 414 So.2d 917, 919 (Ala. 1982) )."
Ex parte Cincinnati Ins. Cos., 806 So.2d 376, 380 (Ala. 2001). We have applied these principles in circumstances similar to those here and have concluded that a beneficiary's claims may be subject to abatement under § 6-5-440.
In Regions Bank v. Reed, 60 So.3d 868 (Ala. 2010), Regions Bank filed a petition for final settlement of certain trusts in the Jefferson Probate Court. The day after Regions Bank filed its petition for final settlement, certain beneficiaries of the trusts filed an action in the Jefferson Circuit Court against Regions Bank alleging *154 "breach of fiduciary duty, negligence, wantonness, breach of contract, fraud, negligent indemnity, violation of the Alabama Securities Act, conspiracy, and aiding and abetting breaches of duty and law" as to the trusts. 60 So.3d at 873. This Court first noted:
" Section 19-3B-203 provides:
" '(a) Except as provided in subsection (b), the circuit court has exclusive jurisdiction of proceedings in this state brought by a trustee or beneficiary concerning the administration of a trust.
" '(b) A probate court granted statutory equitable jurisdiction has concurrent jurisdiction with the circuit court in any proceeding involving a testamentary or inter vivos trust.'
"....
"As this Court has recognized, Act No. 1144, Ala. Acts 1971,
" 'grants to the Jefferson Probate Court "general jurisdiction concurrent with that of the Circuit Courts of this State, in equity, in the administration of the estates of deceased persons, minors and insane or non compos mentis persons, including testamentary trust estates." (§ 1.) Thus, Act No. 1144 grants the Jefferson Probate Court broader jurisdiction than is otherwise granted to the probate courts of this state.'
" Jett v. Carter, 758 So.2d 526, 529 (Ala. 1999)."
60 So.3d at 878. We concluded:
"A plain reading of § 19-3B-203 indicates that subsection (b) acknowledges that certain probate courts have been granted broader powers and that the exception referenced in subsection (a) is that those courts that have been granted those broader powers have the same jurisdiction to hear actions brought by trustees or beneficiaries concerning the administration of trusts as do the circuit courts of this State."
60 So.3d at 880 (emphasis added). We then addressed the issue of abatement, stating, in pertinent part:
"Regions' motion to dismiss based on abatement depends in part upon the assumption that the claims brought by the [trust beneficiaries] in the circuit court are in the nature of compulsory counterclaims to the final-settlement action; thus, the [trust beneficiaries] would have to bring them in the final-settlement action or they would be waived. This assumption is, of course, correct with regard to the claims brought by the [trust beneficiaries] in the circuit court action that pertain to the trusts for which Regions served as trustee or cotrustee, because those claims 'arise[ ] out of the transaction or occurrence that is the subject matter of the opposing party's claim.' Rule 13(a), Ala. R. Civ. P."
60 So.3d at 883.[6] We continued:
"[Section] 6-5-440, Ala. Code 1975, provides *155 that
" '[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.'
"This statutory directive means that 'where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgments or decrees.' Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938) ; see also Ex parte McMichael, 62 So.3d 465 (Ala. 2010). A compulsory counterclaim is an 'action' for purposes of § 6-5-440. See, e.g., Ex parte J.C. Duke & Assocs., 4 So.3d 1092 (Ala. 2008) ; Penick v. Cado Sys. of Cent. Alabama, Inc., 628 So.2d 598, 599 (Ala. 1993). Moreover, it does not matter that one court is a probate court and the other is a circuit court. See, e.g., Martin v. Clark, 554 So.2d 1030, 1032 (Ala. 1989) (observing that '[o]nce Mr. Clark invoked the jurisdiction of the probate court in Shelby County, he could not simultaneously bring an action involving the same subject matter in another court, even one having concurrent jurisdiction'). Accordingly, abatement is applicable in the context of these actions.
"The final-settlement action was the first filed action. Consequently, the claims against Regions filed by the [trust beneficiaries] in the circuit court action concerning the trusts at issue in the final-settlement action are due to be dismissed pursuant to § 6-5-440, Ala. Code 1975."
60 So.3d at 884-85 (footnote omitted).
The facts before us are sufficiently analogous to those presented in Regions Bank for the rationale in that case to be applied here. The petition for termination, as amended, is subject to abatement, and the circuit court erred in denying Angel's motion to dismiss that petition based on the application of § 6-5-440.
Conclusion
Angel's petition is due to be granted. We direct the Jefferson Circuit Court (1) to vacate its order denying Angel's motion to dismiss the petition for termination, as amended, and (2) to enter an order dismissing Joshua's action on the ground of abatement.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Parker, Shaw, Bryan, and Sellers, JJ., concur.
Main, J., concurs in the result.
Bolin and Wise, JJ., recuse themselves.

See Regions Bank v. Reed, 60 So.3d 868 (Ala. 2010) (discussing the jurisdiction of the Jefferson Probate Court as to testamentary trusts); see also Ala. Code 1975, § 19-3B-203 ("A probate court granted statutory equitable jurisdiction has concurrent jurisdiction with the circuit court in any proceeding involving a testamentary or inter vivos trust."); and Ala. Code 1975, § 19-3B-704(c) (appointment of a trustee by a proper court where a trusteeship is vacant).

The materials before us do not include a copy of Brian Lee's will, the petition to probate that will, or an order from the probate court admitting that will to probate. The letters testamentary issued to Angel, however, state that Brian Lee's will had been duly admitted to probate in the probate court.

On September 19, 2016, South Haven Corporation and Loree filed a complaint in the Bessemer Division of the Jefferson Circuit Court against Brian Lee's estate and Angel, individually and in her capacity as personal representative of Brian Lee's estate, alleging that Brian Lee and Angel had misappropriated assets of South Haven Corporation. The proceedings in the Bessemer Division of the Jefferson Circuit Court are not the subject of the present petition.

Facilitating the distribution of Brian Lee's interest in the trust to his estate would benefit his estate. Thus, the present case is distinguishable from Wood v. Wayman, 47 So.3d 1212, 1217 (Ala. 2010), in which this Court noted that "an action brought under the wrongful-death statute is not brought on behalf of the estate, and because the estate gains no benefit from even a successful wrongful-death action, the relation-back provision in § 43-2-831 does not apply to a wrongful-death action brought under § 6-5-410[, Ala Code 1975]."

Even where a trust is terminated pursuant to a court order, a trustee generally would be necessary to carry out the requirements of the order as to the trust.

As noted above, Joshua's sole argument against Angel's motion to dismiss was that she lacked standing. Joshua argues (for the first time in his response to Angel's petition) that § 6-5-440 is inapplicable because he was not a party to the petition for appointment and thus no claims were filed against him. As noted above, however, the petition for appointment specifically named Joshua as an interested party, along with Loree, Franklin IV, and Brian Rutledge, and indicated that those parties were to be served with process as to the petition for appointment, which included a request for final division and distribution of the trust property among the trust beneficiaries. See, e.g., Drath v. Armstrong, 224 Ala. 661, 664, 141 So. 634, 637 (1932) (noting that beneficiaries of a trust are necessary parties to an action to establish their respective interests in the trust). Also, we note that the claims in the petition for termination arose out of the same occurrence that is the basis for the petition for appointment, namely the death of Brian Lee, his failure to make a final division and distribution of the trust property before his death, and the need for someone to conclude the administration of the trust and make a final division and distribution of the trust property.